## MERRITT v. FOOTE.

STREET RAILWAYS—INJURY TO TRAVELER—CONTRIBUTORY NEGLIGENCE.

Plaintiff was injured by a collision with an electric car while attempting to drive across the track. The accident occurred on a clear morning, and plaintiff was familiar, in a general way, with the manner of running street cars. When some 60 feet from the track, which he was approaching on an intersecting street, he looked eastwardly, but, by reason of intervening objects, could see only about 9 rods down the track. He then looked to the west, and, although the view in that direction was unobstructed, continued so to look until struck by the car, which came from the east. His horse was gentle, and was being driven on a walk; and, after it had reached a point 15 feet from the track, there was nothing to obstruct plaintiff's view to the east. *Held*, that plaintiff was guilty of contributory negligence in failing again to look eastwardly, precluding a recovery for the injury; there being nothing in the case to warrant the application of the doctrine of precedent negligence, discovered by defendant in time to have averted the accident.

| | |
|---|---|
| 128 | 367 |
| 134 | 145 |
| 134 | 316 |
| 128 | 367 |
| 135 | 86 |
| 128 | 367 |
| 136 | 510 |
| 128 | 367 |
| 142 | 28 |
| 128 | 367 |
| 147 | 538 |
| 128 | 367 |
| j145 | 17 |

Error to Jackson; Peck, J. Submitted June 5, 1901. Decided October 1, 1901.

Case by Levi Merritt against William A. Foote, receiver of the Jackson Street-Railway Company, for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

The plaintiff sued defendant to recover for injuries received by him when attempting to cross the street-car track of the defendant. The circuit judge directed a verdict in favor of defendant. A sufficient statement of the case is found in the following instruction of the court:

"To entitle the plaintiff to recover in this action, it is necessary that he should show, by a preponderance of the evidence, that the defendant was guilty of the negligence alleged in the declaration; and, second, that he was himself, as he avers in his declaration, in the exercise of due care. Now, if we assume—as I do in this disposition of the case—that the plaintiff has established the first of these propositions, viz., that the defendant was guilty of the negligence charged, still he cannot recover unless he also established by a preponderance of the evidence the second of the propositions, viz., that he was himself in the exercise of due care, and did not, by his own negligence, at the time and under the circumstances, contribute to the accident and consequent injury. In my judgment, no view of the testimony which could be fairly taken by the jury would justify you in finding that the plaintiff was himself free from contributory negligence. Such parts of the evidence as it is necessary to refer to in giving my reasons for this instruction are substantially as follows:

"The accident occurred on the morning of September 28, 1899. It was a clear morning, and the collision happened about 10 o'clock. The plaintiff, who appears to be a man of good intelligence, and in middle life, had lived some years in this city. His business required him to travel about the city considerably. He was familiar, in a general way, with the manner in which cars were run upon the street railway; had seen them run at a high, and what he regarded as a dangerous, rate of speed, before the accident occurred. During a portion of his residence in Jackson he had lived at two different places for a short

time on the line of the railway. At other times he had lived not far removed from the tracks. His present home, where I think he has resided about eight years, is not far removed from the street-car track. On the morning in question he was approaching Main street on Elm avenue, which crosses Main street in the eastern part of the city at about right angles. His horse was a fair traveler, was accustomed to the cars, and was not afraid of them. He was easily manageable, and subject to the control of the plaintiff. He was walking. When he arrived at about one rod south of the south line of the sidewalk on the south side of Main street, the plaintiff, for the purpose of seeing whether any cars were approaching, and it was safe to make the crossing, looked eastwardly. By reason of obstructions that existed there,—trees and a house on the southeast corner,—he could only see eight or nine rods east of Elm avenue, and saw no car within his range of vision. He continued to drive towards the crossing on a walk, and looked west, and continued to look west until at or about the time the accident occurred. When he reached the sidewalk, probably, certainly when he reached the curb on the south side of Main street, he could easily see west to the Michigan Central passenger house, a distance of three-quarters of a mile. There was nothing to interrupt his vision at that time, and he saw that no cars were approaching from the west. He could, from that position, have looked east to the east end of the street-car tracks, a distance of half a mile, and could have seen any car approaching there within that distance. He did not look east, but, after satisfying himself that no cars were approaching from the west, he continued to look west, at the people, he says, and did not turn his view to the east until just about the time that the car struck him. Now, the distance from the south rail of the street-car tracks to the curb on the south side of the street was 25 feet, and it was 44 feet to the south line of the sidewalk. His vehicle, from the nose of the horse to the extreme rear end of the wagon, was about 18 feet. His seat was about 10 feet from the nose of the horse, and about 8 feet from the rear end of the wagon; so that, when his seat reached the curb, where he would have a perfect view both up and down Main street, the head of the horse would be about 15 feet from the south track of the street-railway company.

"Now, it was the plaintiff's duty to use his eyes and

128 Mich.— 24.

ears to avoid danger. It was his duty to look and listen in both directions, and if he failed to do so, and his failure to perform that duty, to exercise that care, contributed to the accident which followed, and resulted in the injury, he cannot recover. In my judgment, the proof plainly and indisputably shows that the plaintiff failed to perform that duty. He did not look east at all after he could see more than eight or nine rods. He did not at least after he came out onto the street, and when he might have seen any car approaching within half a mile. Now, if his carelessness in that regard contributed to his injury, to the accident, it will bar his recovery; and I think there is no room for a difference upon these proofs that it did contribute to the accident. If he had looked, he positively, under the evidence, would have seen the approaching car, and would have seen it approaching at rapid rate. * * * It was imprudent for him to cross, or to attempt the crossing, under the circumstances, wherever the car might have been, and approaching at such a rate of speed. * * *

"Under the testimony, this car was approaching at a rapid rate of speed. It has been argued to me upon this motion by the plaintiff's counsel that the testimony justified the jury in believing that it was approaching at certainly 20 miles an hour, probably 30 miles an hour. When he should have looked east to see it, he must have been within the distance between the curb and the south rail, which could not have exceeded 25 feet, and his horse's head must have been within 15 feet of the rail. The danger of injury would exist whenever either the horse, or any part of it, or the wagon, or any part of it, was on the track as the car came; so that at the utmost the horse's nose must have been within 15 feet, at least (probably less), of the track, when the plaintiff ought to have looked east to see whether the car was coming. Now, if he had looked east at that time, he would have seen a car approaching, and would have seen it approaching at a rapid rate of speed, very rapid. Now, he did not stop his horse; he let him walk along; made no effort to stop him, or to accelerate his speed, until the horse got on the track. The interval that elapsed there would aid in determining how far the car was away when he might have seen it if he had looked. Its distance away might, to some extent, be determined also by the effect of the collision and the distance the car

went after the collision.    This is the evidence, substantially, upon which reliance may be placed in determining how far back of the actual place of collision the car was when he might have seen it; and his distance from the car track, and the rate of speed which he was driving, also would determine that question.    Substantially the question of fact to be determined by the jury would be this:   Whether, in the exercise of ordinary prudence, under the circumstances, at the time he should have looked and seen the car approaching, whether it was a reasonable thing for him to attempt to make the crossing in the manner he did, or otherwise.

"Now, if he had seen the car coming, he would be entitled, if he could reasonably expect to make the crossing in safety, to attempt to do it, considering the rapidity with which the car was coming, and his own position with reference to it.    If such an attempt would not be reasonable, he should have stopped.    Under this evidence I am satisfied that Mr. Merritt could not reasonably expect to make that crossing if he had seen the car coming at the rate of speed that it must have been coming, and the rate of speed he was traveling, and the distance he was from the street-car track.    In fact, I think that no reasonable man, under the evidence, could have reached the conclusion that it was a safe thing for him to do, a prudent thing for him to do.    On the other hand, it was certainly, under all the evidence, an imprudent thing for him to do.    Therefore I think that it leaves no question to be submitted to the jury in that respect.    Now, the car struck his front wheel just after the horse had cleared the track on the north side.    That indicates also the distance he must have had to travel from the time when he could have seen the car if he had looked; and his rate of speed and manner of driving are also evidence, which, with all the other testimony in the case, makes it conclusive to my mind that he attempted that crossing imprudently, incautiously, and carelessly; and the effect of that was to contribute to the accident, and therefore it cannot be said that he was himself in the exercise of due care, and for that reason he cannot recover."

*Blair, Smith & Townsend*, for appellant.

*Wilson & Cobb*, for appellee.

GRANT, J. (*after stating the facts*).  I think the
court was correct in directing a verdict for the defendant,
and in the instruction quoted gave the sound rule of law
applicable to the case.   In addition to the facts stated in
the opinion of the circuit judge, the plaintiff testified that,
when he had reached the curb, there was nothing to hinder
his seeing the car a long way; that there was nothing to
obstruct his vision; that he might have seen the car if he
had looked.   If he had looked, and seen the car approach-
ing in such close proximity, it is conceded that he would
have been guilty of contributory negligence in attempting
to cross in front of it.   The distance from the curb line
to the south rail was 25 feet.   A glance to the east, occupy-
ing but a fraction of a second, would have shown him the
approaching car.   His view to the west was unobstructed
as he approached the street.   He knew there was no car
coming from that direction.   He knew that his only
danger was from the east.   He chose to rely upon his
glance to the east, when he could see a few feet only of
the track.   It is clear from the testimony that he should
have expected a car from the east about that time.

It requires no argument to show that greater diligence
is required by travelers crossing highways on which are
street cars than upon those where there are none.   The
public demands rapid transit, and ponderous cars are re-
quired and permitted to be used.   They must go faster
than the ordinary vehicles, and are permitted to do so by the
ordinances of every city, unless it be in the most crowded
thoroughfares.   They cannot be stopped as speedily as
vehicles drawn by horses.   There is a reciprocal duty on
the part of the street-railway companies, through their
motormen, to watch and keep their cars under control as
far as practicable.

Is it reasonable to permit plaintiff to recover when the
slightest care upon his own part would have avoided the
accident?  There is no claim of intentional or willful
wrong on the part of the motorman.   I find no probative
evidence in the record that the gong was not sounded.

Two or three witnesses say they did not hear it, but they do not testify that they were listening, or paying any attention; on the contrary, it is evident they were not. The whole affair happened in a few seconds from the time the plaintiff reached the line of vision so that he could see the car and the motorman could see him. The nose of his horse was then 15 feet from the track. At what point was this motorman chargeable with knowledge that plaintiff intended to drive across the track in front of him? Not until the motorman had reason to believe that plaintiff did not intend to stop was he called upon to apply his brakes and shut off the current. Plaintiff's horse was on the walk. He could have stopped his horse with perfect safety when his nose was within three feet of the line of the car. The negligence of the plaintiff is conceded, and, in my judgment, it is nothing short of gross negligence. His negligent act, which resulted in his injury, was almost simultaneous with the act of the motorman, if he was guilty of any; and the two negligent acts caused the disaster. This is a case of simultaneous negligence. If it be held that the motorman should have seen and known that this plaintiff was unconscious of danger,—unconscious of the approaching car,—and therefore guilty of willful negligence in running him down, what becomes of the doctrine of contributory negligence, which is firmly established by the numerous decisions of this court? We have distinctly repudiated the doctrine of comparative negligence. I think the case falls squarely within that of *Richter* v. *Harper*, 95 Mich. 221 (54 N. W. 768), written by my Brother MONTGOMERY, in which he said:

"It is urged by plaintiff's counsel that the negligence of defendants was so gross and willful as to excuse concurring negligence on the part of the plaintiff; it being claimed that, where the negligence of the defendant is gross or willful, the contributory negligence of the plaintiff is not a defense. This is but another way of stating the doctrine of comparative negligence, which has never obtained in this State."

The case, in my judgment, comes expressly within the doctrine established by the following decisions of this court: *Hine* v. *Railway Co.*, 115 Mich. 204 (73 N. W. 116); *Fritz* v. *Railway Co.*, 105 Mich. 50 (62 N. W. 1007); *McGee* v. *Railway Co.*, 102 Mich. 107 (60 N. W. 293, 26 L. R. A. 300, 47 Am. St. Rep. 507); *Bennett* v. *Railway Co.*, 123 Mich. 692 (82 N. W. 518); *Hilts* v. *Foote*, 125 Mich. 241 (84 N. W. 139).

This is not a case for the application of the doctrine that plaintiff may recover, notwithstanding his own negligence exposed him to risk, if the injury was caused by the negligent act of the defendant after he had become aware of plaintiff's danger. Such a case was that of *Laethem* v. *Railway Co.*, 100 Mich. 297 (58 N. W. 996), where plaintiff's milk sleigh stood close to the track while he was engaged in lifting a can out of his sleigh to transfer it to the sleigh of another. Neither is it the case of *Ryan* v. *Railway Co.*, 123 Mich. 597 (82 N. W. 278), in which the plaintiff looked 75 or 80 feet, and judged that he had time to cross before a car would come. When one can readily see danger immediately threatening, and can easily avoid it, it is his duty to do so; and, if he is injured, he alone must bear the consequences.

The judgment is affirmed.

Montgomery, C. J., Hooker and Long, JJ., concurred. Moore, J., took no part in the decision.