### BROGETSKI *v.* DETROIT UNITED RAILWAY.

1. STREET RAILROADS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE —DIRECTING VERDICT.

   Whether it was negligent for the driver of a load of lumber and a slowly moving team to attempt to cross in front of a street car which he claimed was 200 feet and upwards behind him, was a question for the jury, where he crossed at a point at which the track turned from the middle of the street to the side and it might have appeared to the motorman that he would be obliged to cross at that place, and where testimony showed that the car struck the lumber projecting from the rear of the wagon, which had entirely crossed the tracks in safety.

2. SAME.

   But the judgment is reversed and a new trial ordered on the theory of three of the justices that it was error to instruct the jury that the motorman was negligent if he failed to anticipate that plaintiff might cross the track at the crossing, and on the theory of two of the justices that there was error in an implication, contained in the instructions, that the plaintiff was not required, equally with the motorman, to act with reference to known conditions, including the one that defendant's car had the right of way.   BIRD, MOORE, and BLAIR, JJ., dissenting.

Error to Wayne; Donovan, J.   Submitted October 27, 1910.   (Docket No. 129.)   Decided June 2, 1911.

Case by William Brogetski against the Detroit United Railway.  Judgment for plaintiff.  Defendant brings error.  Reversed.

*Brennan, Donnelly & Van De Mark,* for appellant.

*Washington I. Robinson* and *Henry C. L. Forler,* for appellee.

OSTRANDER, C. J.  The plaintiff, with a team and load of lumber, was driving west on the right-hand side of a paved street, in the center of which were defendant's tracks.  Behind him, going in the same direction, was one of defendant's cars.  In front of him was a point where the pavement ended and where the road curved to the south, so that if plaintiff continued on his way he would be obliged to cross the defendant's tracks.  Plaintiff knew that the car was behind him; at least, he so testified.  The motorman operating the car saw the plaintiff ahead of him.  Both of them knew about the crossing which has been mentioned.  The motorman testified:

"*Q.* Now, back to the original question, you knew if that wagon continued in the direction in which it was going it would eventually go over that crosswalk?

"*A.* Yes, sir.

"*Q.* So that you knew if the wagon kept on going, and your car going the same way you were going, they would meet? ·

"*A.* We would have to cross.

"*Q.* It was either up to you or the man to stop; is that right?

"*A.* I understand you; of course it was up to either one or the other of us to stop.

"*Q.* As a matter of fact, neither one of you did stop in time?

"*A.* No, sir.  *  *  *

"*Q.* I believe it has been testified in this case by two or three witnesses that the brick pavement ends at the planks; now, if a person came along here driving a horse on the right-hand side of the street, is there anything when he gets here to prevent him from turning north at Lumley, just as well as south across these planks?

"*A.* No, sir.

"*Q.* You cannot state positively when you see a man going along there that he is not going on Lumley avenue?

"*A.* No, sir. I was not taking any chances on him doing anything. The fact that Lumley avenue was there made no difference to me in the way I was conducting the car. I knew Lumley avenue was there. I was not taking any chance on him turning up there."

As a matter of fact, the plaintiff reached the crossing a little ahead of the car. The witnesses are not entirely agreed, some saying, as it is averred in the declaration, that the car struck the lumber sticking out from the rear of the wagon. Others say that the car struck the wagon. All agree that the car was going very slowly, under brakes, and that it moved not more than from one to three feet beyond the point where the collision occurred. It is clear, therefore, that if the car had been going a very little slower or the plaintiff a very little faster the plaintiff would not have been injured. The jury was called upon to determine where the fault lay.

I am not prepared to hold that the trial court was in error in advising the jury that the defendant's agents were bound to take some notice of the known conditions, and to operate the car with some regard for the possibility that the plaintiff would attempt to cross the track ahead of the car. It was precisely what a prudent motorman would do, and, if his testimony is believed, it is what defendant's motorman did do. The plaintiff testified that he knew a car was coming behind him. He knew that his way lay across the railway tracks. All of this is recognized in the instruction which the court gave to the jury. The fault in the instruction is in the intimation, which, with other portions of the charge, I think it conveys, that plaintiff was not required, equally with the motorman, to act with reference to known conditions, including the one that the defendant's car had the right of way.

Beyond this I am impressed that plaintiff sustained none of the allegations of negligence alleged in the declaration. The declaration contains various allegations of

the duty of the defendant and of breaches of duty. The testimony does not tend to prove as a cause of the plaintiff's injury that the car was operated in disobedience of an ordinance of the city of Detroit, nor to support the allegation that the defendant employed and put in charge of the car incompetent, incautious, reckless, imprudent, and negligent motormen, nor that the car was not run at a lawful and reasonable rate of speed, in compliance with said ordinance.

The alleged breach of duty upon which the plaintiff must rely is the following:

"And the plaintiff further avers that the said defendant on the said day and date aforesaid, by its servants, agents, employés and representatives in a careless, negligent, and grossly careless and improper manner, did then and there operate, propel, run, and move one of its said cars, in, along and upon, and over the said public street, to wit, Michigan avenue at and near the corner of Central avenue, upon its tracks located as aforesaid, and at such a high rate of speed, to wit, thirty miles an hour or thereabouts so as to lose the safe and proper control of the same, thereby and then and there colliding with and running into a certain wagon then and there loaded with lumber, upon which the said plaintiff was then and there lawfully riding, and which wagon was then and there pulled along and upon the said public street and highway at or near the point and location aforesaid, by a team of horses attached to said wagon, and which team was then and there being driven by the said plaintiff in, along and upon the said street at the point and location aforesaid in a westerly direction and in front of said car and in close proximity to the tracks of the said defendant and in plain view and vision of the said defendant, and its motorneer and representatives in charge of the said car when without notice or warning to the said plaintiff, the said defendant and its servants in charge of one of its said cars, then and there carelessly, negligently and in a grossly careless manner propelled and moved the said car with great force and violence against and collided with the lumber then and there sticking out from the rear of the said wagon of the said plaintiff, then and there and thereby striking the said lumber with such force and momentum that it upset and turned the said wagon and lumber over."

Whether the plaintiff gave no indication that he would cross the track until the car was within about 50 feet of him, as the defendant claims, within which distance it was impossible to stop the car, or whether the motorman made a miscalculation as to his own speed or the speed of plaintiff, or both, there is no testimony tending to prove any gross or wanton negligence on the part of defendant's agent, and none that he lost safe and proper control of the car. The declaration was amended at the trial by adding the descriptive words:

"While partly across the car tracks which curved northerly at the end of the paved part of Michigan avenue, plaintiff's loaded wagon was struck by defendant's car."

This amendment did not change the theory indicated in the original declaration. We think it unnecessary to notice other assignments of error.

The judgment is reversed, and a new trial granted.

STONE, J., concurred with OSTRANDER, C. J.

HOOKER, J. The defendant has appealed from a verdict and judgment for $1,000 for injuries alleged to have been suffered through the negligence of defendant's street car driver or motorman. Michigan avenue, in Detroit, runs west until it reaches the intersection of a street, which is called Lumley street, south of Michigan avenue, and Everett street, north of said avenue. At that point Michigan avenue angles sharply to the southwest, and the car track leaves the center of the street and takes the north side. There is a plank crossing at the intersection. Persons traveling west must cross this if they would turn to the south on Lumley street or continue westerly on Michigan. To turn up Everett street it is unnecessary to cross the track. This will be easily understood from a glance at the plat attached hereto. The plaintiff driving at a walk, what he called a slow team, turned upon the crossing, and his wagon or lumber projecting therefrom

was struck by defendant's car and overturned, and he was injured. The car had been brought so near to a stop that, as all agree, it ran only two or three feet after striking the wagon. Defendant claims that negligence was not proved against it, also that contributory negligence was conclusively proved, or, if not, that the instructions upon that subject were erroneous. We will refer to the question relating to contributory negligence first. Defendant's counsel offered the following requests:

"(4) I charge you that it was the duty of the plaintiff to look to see if a car was coming before driving upon the track, and if you believe that the plaintiff did not look before driving his team upon the track, and that he did not look until his team was on the track, in such case, I charge you that he would be guilty of contributory negligence, and your verdict must be for the defendant.

"(5) I charge you that if you believe that the plaintiff turned his team upon the track in front of the car when the car was at a point at such a distance from the team that it could not be stopped in time to avoid a collision, that in such case the defendant is not guilty of any negligence in the premises, but the plaintiff is guilty of contributory negligence, and your verdict must be for the defendant, no cause of action.

"(6) The evidence in this case shows that defendant's car was proceeding along Michigan avenue in a westerly direction, and that the plaintiff was driving on the right-hand side of the street in the same direction. At a certain point the plaintiff attempted to cross the track of the defendant. I charge you that the defendant's motorman when he saw the plaintiff driving his team westward along the right-hand side of the road and parallel with the track was under no obligation to check the speed of his car, if said speed was a lawful one, nor to stop said car, but was entitled to proceed until something occurred which indicated to him that the plaintiff was going upon the track. There is nothing in this case to show that the defendant's motorman knew that plaintiff was going to drive upon the track previous to the time he actually did so. I, therefore, charge you that if you believe that when the plaintiff turned upon the track that it was impossible

then to stop the car in time to prevent a collision, that in such case your verdict must be for the defendant."

The court said:

"I told the jury during the course of Mr. Donnelly's argument. He said he would ask the court to charge the jury that, unless the driver looked before turning upon the track, he could not recover, he would be guilty of negligence; he has asked me to charge that in a request. Now, I told the jury, I said I could not charge that way; I said that would take the case practically from the jury because at an exact time he did not look, as I remember it, but I would charge the jury that the case would be somewhat different if he was coming down and continued, or started, to cross the track, and if they had no knowledge of it, but they having seen him going on ahead of them, was some knowledge to them that the man was ahead—that is what I was going to charge. I take it out of the ordinary.

"*Mr. Donnelly:* I think your honor said, if he went upon the track without looking to see if the car was coming, you would not charge them that was negligence.

"*The Court:* Not under this particular case, because they had seen him ahead; I will cover that.

"I ask you to listen to the requests also stating the defendant's position: I charge you that, before the plaintiff can recover at all in this case, he must, by a preponderance of evidence, convince you that the collision between his wagon and the car was caused by the negligence of the defendant's agents, or employés—that would be the motorman in this case—but he must also convince you that he himself on that occasion was not guilty of negligence which in any way contributed to the injury. He must be free from negligence, and the negligence entirely upon the part of the motorman. I transpose that a little, it is my own way of stating it. I charge you again that it was the duty of the plaintiff to look to see if a car was coming before driving upon the track—that is, I do not make the double looking just the moment of driving upon the track, because I leave that to the jury, whether after looking up to see them once he had a reasonable right to believe that the way was clear or that he had time to get over—and if you believe that the plaintiff did not look before driving on the track, then he would be guilty of contributory negligence and he could not recover. I charge

you that if you believe the plaintiff turned his team upon the track when the car was such a distance from the team that it could not be stopped in time to avoid collision, and that in such case, the defendant is not guilty of negligence in the premises, but in that case the plaintiff would be guilty of contributory negligence."

The judge continued:

"I told you yesterday that that is in a case where a motorman came along in the regular way by the side, on a straight track with his car, having had it in control, and a man suddenly starts across the track, without any notice to the motorman, why that is negligence of the plaintiff in that case.  He has no right to cross the track suddenly, without any notice; like a man coming in from a side street suddenly driving upon the track, without any chance for the motorman to control the car, then he takes his chances.  But here is a case where two men were driving along, and the driver knew the car was back of him, and coming, and the motorman knew the team was ahead of him, and somewhere it must turn upon this; they had some knowledge that there was a curve in that track.  Both of them had that knowledge equally, I think, and they had some knowledge that if the man kept on in his regular way that he must cross somewhere, so I will leave that question, going on that curve in a little different way than a man turning square onto a straight track, or onto any track without any notice of the motorman, and I thereby cover the last requests of the defendant.  I decline to charge you that the two men in this case were the same as though they had a continuous straight track, each of them a continuous straight road to go on, but I leave it to you whether under the conditions of this peculiar track, coming at the end of the pavement, on the one hand, and coming at the natural course, on the one hand, and going to a change in the course, and the course of the car, on the other hand, whether the motorman or the teamster was to blame.  If the teamster was partly to blame, he cannot recover.  If the motorman was all to blame, then the plaintiff can recover."

At the close of the charge the following occurred:

"*Mr. Donnelly:*  May I say something ?  Your honor stopped me in arguing to the jury yesterday that if this man turned upon the track without looking to see if the

car was coming then in sight—then he would not see it, and I asked your honor, when you charged this morning, to make it very clear, and I ask your honor whether you have changed your mind on that?

"*The Court:* I have not in any way changed my mind.

"*Mr. Donnelly:* I understand if a man turns upon the track without looking to see if the car is coming.

"*The Court:* I have not put it that way. I say if a man goes or is going on a straight line, and suddenly turned upon the track; but in this case he claims he was coming in his regular road, and the track itself turned, and he went right straight across the regular way, and both of them knew there was a turn there. It is not an ordinary going across the pavement. I absolutely refuse. I say if he came in on a street suddenly, or on a straight track like Woodward avenue, suddenly turned onto the track, they cannot recover. Here is a different condition, and I leave it to the jury whether, where in this condition, to illustrate both going on the car track, whether they have not both notice.

"*Mr. Donnelly:* The man was not in duty bound to look before going on the track?

"*The Court:* I remember he said he has looked once.

"*Mr. Donnelly:* I do not understand your honor has charged him as looking once.

"*The Court:* I understand the counsel now to narrow it down to the very moment when turning on; the conductor did not look out the very minute before turning on.

"*Mr. Donnelly:* I mean within view of it.

"*The Court:* We will say within 10 feet. I have no evidence that he did look. The motorman says he did not turn around. The motorman says he did not see him look. He looked towards him and he made no indication, that is all I know. He was not obliged to do any more than he did do.

"*Mr. Donnelly:* He did not look, and he did not have to.

"*The Court:* At that immediate moment when they touched the curb.

"*Mr. Donnelly:* Does your honor hold if he looked a half block that was enough?

"*The Court:* Yes, if he looked back 400 feet, as he

claimed, that was sufficient; if he looked back at Central avenue, that was ample looking.

"*Mr. Donnelly:* I am not quarreling with your honor's view of the law, but I want to understand your honor.

"*The Court:* That is what I mean.

"*Mr. Forler:* If he looked back there at Central avenue?

"*Mr. Donnelly:* If he looked back a half block before going on the track."

It was somewhat difficult to determine, from plaintiff's testimony, just where he was when he first looked for the car or whether he looked twice.   He said:

"Did you see the car?

"*A.* Yes; I saw the car.   It was a block and a half away from me, and I started to drive over—to come right over.

"*Q.* How far had you gone when the car struck your wagon?

"*A.* About two blocks and a half."

This is all that he said on direct examination.   It is undisputed that he had driven west on this street for a considerable distance.   On cross examination he said:

"*Q.* Did you know this car was coming?

"*A.* Well, I looked around and the car was a block and a half away from me.

"*Q.* Where were you then?

"*A.* I was just going to drive over on the other side of my road.

"*Q.* You were driving over the track at that time?

"*A.* Yes, sir.

"*Q.* Did you look before you drove over?

"*A.* Yes, sir, the car was far enough away so that I could make it, but the car after that was coming pretty fast.   *   *   *

"*Q* Before the horses went on the track where was the car first?

"*A.* A block and a half away from me.

"*Q.* How do you know that?

"*A.* I was looking around and I thought I could make it, to come over yet, but the car came on and struck the hind part of the wagon.

"*Q.* You were driving on the right of way without stopping?

"*A.* Yes, sir; I went right ahead.

"*Q.* So that the car came a block and a half while you were crossing over the track? (No answer)."

This is substantially all on the subject from plaintiff's witnesses. Apparently the trial judge understood that he had looked around first some little time before he crossed. The jury may or may not have taken that view of it. On the part of defendant, considerable testimony was given indicating care on the part of the motorman, and that the car was nearly upon him when plaintiff turned his team and drove upon the track.

If the jury believed that just as the plaintiff turned on the track the car was from 200 to 500 feet away, it was for them to determine whether it was reasonable for plaintiff to attempt to cross in front of the car. There was evidence in the case which warranted the leaving that question to the jury under proper instruction.

The plaintiff's requests are not in the record except as the court gave some of them. One of them should not have been given. We quote it again:

" On the part of the plaintiff, I charge you, that if you believe from the testimony that the plaintiff before crossing the tracks of the defendant company looked back and saw the car approaching at or about Central avenue, and thought he would have sufficient time to safely cross, that he cannot be charged with contributory negligence in so attempting to continue upon the course, and it was the duty of the motorman to have his car under control and to stop the car before colliding with the plaintiff."

It omits any allusion to the reasonableness of the act, and if the subject had been left there it would have been a fatal error. But as can be seen from the whole quotation heretofore given, it was followed by instructions qualifying it.

We think, however, that there is a fatal vice in this charge, in the attempt to distinguish this from cases where the railroad continues in the center of the street. Ap-

parently the judge was of the opinion that because plantiff had to cross the track to continue west the motorman was required to anticipate that he might do so, and have his car under control, and he said:

"I told you yesterday that that is in a case where a motorman came along in the regular way by the side, on a straight track with his car, having had it in control, and a man suddenly starts across the track, without any notice to the motorman, why that is negligence of the plaintiff in that case. He has no right to cross the track suddenly without any notice; like a man coming in from a side street suddenly driving upon the track, without any chance for the motorman to control the car, then he takes his chances. But here is a case where two men were driving along, and the driver knew the car was back of him, and coming, and the motorman knew the team was ahead of him, and somewhere it must turn upon this; they had some knowledge that there was a curve in that track. Both of them had that knowledge equally, I think, and they had some knowledge that if the man kept on in his regular way that he must cross somewhere, so I will leave that question, going on that curve in a little different way than a man turning square onto a straight track, or onto any track without any notice of the motorman, and I thereby cover the last requests of the defendant."

We think that there was no more necessity to slow down the car under such circumstances than in a case where the motorman knows that a man is likely to appear suddenly from a side street from which the car is hidden, or to attempt to cross at any other point. According to defendant's testimony, the motorman saw this man driving leisurely along. According to custom he rang his gong, yet plaintiff suddenly turned upon or toward the track. Apparently he was in a state of abstraction and did not notice the gong, if this testimony was true. If the motorman then acted without delay, and made every reasonable effort to avert a catastrophe it was all he could do. But this charge would naturally lead the jury to think that he should have acted earlier, upon the assumption that the plaintiff would drive on the track, instead of turning up

Lumley street, or, if he desired to cross, taken some pains to ascertain whether it was safe and stopped his team if the car was near. It is not necessary to slow down cars every time a pedestrian or driver of a team is seen upon the road, lest they turn suddenly upon the track in front of the car, and there is no more presumption that a man will cross the track without care where his reason for crossing is due to the track changing from the middle to the side of the road than there is where he does so from a desire to turn off at any street intersection, or to enter an alley or residence drive. *Daly* v. *Railway Co.*, 105 Mich. 193 (63 N. W. 73); *Lyons* v. *Railway Co.*, 115 Mich. 114 (73 N. W. 139); *Henderson* v. *Railway Co.*, 116 Mich. 368 (74 N. W. 525); *Merritt* v. *Foote*, 128 Mich. 367 (87 N. W. 262).

We have held in earlier cases that one who would cross a track should look before doing so to ascertain whether it will be dangerous. If he does nothing of the kind, he is guilty of contributory negligence. Many of these cases are cited in the brief of counsel, and are so readily accessible and generally known to the profession as to make it unnecessary to cite them.

We think it unnecessary to discuss other assignments of error. The judgment is reversed and a new trial ordered.

McALVAY and BROOKE, JJ., concurred with HOOKER, J.

BIRD, J. I concur in the opinion of Mr. Justice HOOKER save in that part of it wherein he holds as error the following instruction of the trial court:

" But here is a case where two men were driving along, and the driver knew the car was back of him, and coming, and the motorman knew the team was ahead of him, and somewhere it must turn upon this; they had some knowledge that there was a curve in that track. Both of them had that knowledge equally, I think, and they had some knowledge that if the man kept on in his regular

way that he must cross somewhere, so I will leave that question, going on that curve in a little different way than a man turning square onto a straight track, or onto any track without any notice to the motorman."

The distinction which the trial court drew between the situation as it appeared there, and the situation where a traveler turns suddenly to cross a track without warning to the motorman, was, in my opinion, well taken. The motorman knew the plaintiff was nearly at the end of the traveled way where he would have to cross the tracks if he kept going in the same direction. The motorman says he expected plaintiff would cross the track at that point or that he was not taking any chances on his not doing so. This situation is decidedly different from one where a traveler turns suddenly and without warning to cross a track ahead of an oncoming car. In one case the motorman is warned by the knowledge that plaintiff must cross, in the other the motorman has no warning of an intention to cross. In my opinion the trial court did well to point out this distinction.

In taking the view that no error was committed by the trial court in giving this instruction, it follows that the case should be affirmed.

MOORE and BLAIR, JJ., concurred with BIRD, J.