HICKEY *v.* DETROIT UNITED RAILWAY.

1. EVIDENCE — STREET RAILWAYS — CROSS-EXAMINATION — TESTIMONY AT CORONER'S INQUEST.

In an action against a street railway company for the death of plaintiff's decedent caused by a collision at a street crossing between decedent's automobile and a street car, where the motorman in charge of the car, called by plaintiff for cross-examination under the statute, testified that the details as to speed, distances, etc., were fresher in his mind within a week or two after the accident than at the time of the trial, it was proper to use his testimony given at the coroner's inquest for the purpose of refreshing his memory, and, upon his denying the correctness of his previous testimony, for the purpose of testing his credibility.

2. STREET RAILWAYS—DEATH—EVIDENCE—NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Testimony that decedent, before attempting to cross a street car track, brought his automobile down to a speed of six or seven miles an hour, and looked in the direction of an approaching car, when he accelerated his speed and attempted to cross, that the street car was being operated at the extreme limit of speed in a thickly settled district of the city, that when the car was at least 100 feet from the crossing the motorman realized that the automobile was attempting to cross the track ahead of him, and he did not take extreme measures to stop the car because he judged that it had time to cross safely, *held*, to present questions for the jury as to defendant's negligence and decedent's contributory negligence.

3. TRIAL—INSTRUCTIONS.

*Held*, that the issues were clearly and fairly presented to the jury, with proper instructions.

4. NEW TRIAL—WEIGHT OF EVIDENCE.

There being sufficient evidence to sustain the verdict for plaintiff, the court did not err in denying the motion for a new trial based upon this ground.

Error to Wayne; Hosmer, J.  Submitted June 12, 1918.  (Docket No. 71.)  Decided July 18, 1918.

Case by Annie R. Hickey, administratrix of the estate of John P. Hickey, deceased, against the Detroit United Railway for the negligent killing of plaintiff's decedent.  Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Corliss, Leete & Moody* and *William G. Fitzpatrick* (*Thomas T. Leete, Jr.,* of counsel), for appellant.

*Keena, Lightner, Oxtoby & Hanley,* for appellee.

KUHN, J.  On July 4, 1915, plaintiff's intestate, John P. Hickey, a man about 60 years of age, was driving an automobile in a southerly direction along Twelfth street in the city of Detroit, and while attempting to cross the tracks of the defendant company on Porter street, was struck by one of defendant's street cars and received injuries from which he died a short time afterwards.

The track on Porter street is a single track, over which the Sherman-street cars travel in a westerly direction.  Ordinarily no other cars use this portion of the track, but on the day of the accident the Baker-street cars, owing to some obstruction in their usual line of travel, had been re-routed so as to make their trip west along this part of Porter street, and it was a Baker-street car which collided with the automobile of the deceased.  The block extending from Twelfth street easterly to Tenth street is an unusually long one, Eleventh street not being opened at Porter street, and most of the way along this block the cars run on a down grade.  About 450 feet west of Twelfth street (and just beyond Vermont avenue) there is a high bridge upon which the street cars pass over some rail-

road tracks, and the rise in the grade from a point about 213 feet west of the center of Twelfth street to the top of this bridge is quite steep. The width from curb to curb on Porter street varies from 28 feet just east of Twelfth street to 29.4 feet just west of Twelfth street, and the distance from the car track to the curb on either side is about 12 feet. Twelfth street from curb to curb is about 30 feet wide at this point.

Mr. Hickey had been driving down Twelfth street at a speed estimated between 10 and 15 miles an hour, but, as he approached Porter street, slowed down to 6 or 7 miles an hour and looked in the direction of the approaching car, which was then about 125 feet east of the east curb of Twelfth street. He was then about 15 feet from the car track, and almost immediately accelerated the speed of the automobile and attempted to cross. The street car was going at a high speed, estimated by some of the witnesses as at least 30 miles an hour. The motorman was called by the plaintiff as an adverse witness for cross-examination. He testified that the car was going at full speed and down grade, but estimated the speed as 18 or 20 miles an hour, stating that he did not believe the car could go any faster than that. He admitted having testified at the coroner's inquest that the car was going 30 miles an hour, but insisted that he was mistaken and from later experience and observation believed that 18 or 20 miles an hour was a more correct estimate. He admitted that the car was going as fast as any he ever operated, and that he had never seen a street car in the city of Detroit travel faster than he was going at the time of the accident. He further testified that he first saw the automobile when he was about 150 feet from Twelfth street; that it was slowing down and was about even with the north curb of Porter street; that it traveled a few feet before its speed began to accelerate, at which time his car was about 100 feet

from the east curb of Twelfth street; that he then began to do something to stop his car, but not all that he could have done, because at that time he "judged it was going to get across the track;" that when he was within 50 feet of the east curb of Twelfth street he came to the conclusion that the automobile could not get across safely, and that he then threw off the current and reversed the car and kept the reverse on until the car came to a stop about 100 feet beyond the west curb of Twelfth street.

At the close of the testimony the defendant moved the court to direct a verdict in its favor, which motion being overruled, the court was thereupon requested to reserve final decision of the question under the Empson act (Act No. 217, Pub. Acts 1915, 3 Comp. Laws 1915, § 14568 *et seq.*), and such reservation was made. The case was submitted to the jury, who returned a verdict for the plaintiff of $7,000, upon which judgment was duly entered. Defendant thereupon filed a motion for a new trial or for judgment *non obstante veredicto*. This motion was denied, and defendant filed written exceptions to the decision of the court thereon.

Appellant's counsel have argued the 25 assignments of error under eight heads. We think the following discussion will fairly dispose of the case.

1. The first four assignments allege error in connection with the examination of the witness Percy Morgan, the motorman of the car, who was called by the plaintiff under the statute for cross-examination. He had been a witness at the coroner's inquest, and his testimony at the trial of the present case varied somewhat from that given at the inquest. Concerning these inconsistencies he was closely questioned by plaintiff's counsel. Complaint is made that counsel did not confine his efforts to showing previous contradictory testimony, but that, without first bringing out any affirmative statements on the point in question, he

tried to bring out and read into the record as affirmative evidence the testimony of this witness before the coroner. An examination of the record discloses that when reference was first made to this prior testimony, the witness had just stated that he did not know whether or not the speed of the car he operated at the time of the accident was 30 miles an hour. He explained that more than two years had elapsed since the accident, and that some of the details had slipped his mind; that the details as to speed, distances, etc., were fresher in his mind within a week or two after the accident than at the time he was being questioned in this case. It was then that plaintiff's counsel began to read to him certain questions and answers from his testimony at the inquest, manifestly for the purpose of refreshing his recollection as to these details. But the witness, instead of either verifying his estimate of 30 miles an hour as given at the coroner's inquest, or reiterating his former statement that he did not know, shifted his ground and asserted quite positively a new estimate of the speed, claiming that while he had given his testimony at the inquest in perfect good faith, yet further experience as a motorman had convinced him that he had then overestimated, and wished to state that he would fix the maximum speed of the car at 18 or 20 miles an hour. He could give no definite basis for this belief, had made no tests or anything of the kind, but insisted that that was his best judgment at the time of the trial. . We are unable to discern any effort on the part of counsel to make the questions and answers given at the coroner's inquest affirmative evidence in this case, but are clearly impressed that the original purpose in referring to them was to refresh the memory of the witness, and upon his denying the correctness of his previous testimony, to use it in testing the credibility of the witness.

There was other affirmative evidence as to the speed of the car.

2. Assignments of error 6 to 11 relate to the refusal of the court to direct a verdict in favor of the defendant on the ground that there was no proof of negligence on the part of defendant and also for the reason that plaintiff's intestate himself was guilty of negligence contributing to the injury. Cases in which a plaintiff has been injured by being struck by a car while attempting to cross the tracks ahead of it, fall into two classes, *first,* those in which the circumstances clearly show an entire failure on the part of the plaintiff to look for the car, or at best a mere careless glance, or else evident recklessness in making the attempt to cross. See *Borschall* v. *Railway,* 115 Mich. 473; *Hilts* v. *Foote,* 125 Mich. 241; *Merritt* v. *Foote,* 128 Mich. 367; *Colborne* v. *Railway,* 177 Mich. 139; *Miller* v. *Railway,* 200 Mich. 388; *second,* cases where the plaintiff saw the approaching car and decided there was sufficient time to cross ahead of it, under circumstances which do not clearly show recklessness in the formation of such judgment. See *Ryan* v. *Railway Co.,* 123 Mich. 597; *Chauvin* v. *Railway,* 135 Mich. 85; *Gaffka* v. *Railway,* 143 Mich. 456; *LaLonde* v. *Traction Co.,* 145 Mich. 77; *Seebach* v. *Railways Co.,* 177 Mich. 1; *Hildebrandt* v. *Railway,* 200 Mich. 52. In cases of the first class we have held that a verdict should be directed for the defendant, and it is this line of cases upon which appellant's counsel rely, particularly the case of *Colborne* v. *Railway, supra.* But in the latter case it is expressly stated:

"This is not of that class of cases in which the car has been seen, and the plaintiff, reasonably believing a crossing could safely be made, has attempted to cross, and been injured, owing to the fact that the car was run at an excessive rate of speed, or being otherwise negligently operated, and therefore the question of whether plaintiff, in the exercise of common pru-

dence, might have reasonably judged there was sufficient time to pass became a question of fact, upon which opinions might reasonably differ."

The quotation well describes the second class of cases above referred to, and we think it is clear that the instant case falls within this class. Here the motorman was admittedly operating his car, in a thickly settled district of the city, at the extreme limit of its speed; he admits that he realized, when he was at least 100 feet from the crossing, that the automobile was attempting to cross the track ahead of his car, yet he not only failed to reduce the speed sufficiently to avoid the collision, but did not succeed in bringing his car to a stop short of 100 feet beyond the west curb of Twelfth street. He admits that he did not at once take extreme measures to stop the car, because he judged that decedent had time to cross safely. Yet, under these circumstances, defendant takes the position that the motorman's conduct was not negligent, but that decedent, in relying upon a similar judgment on his own part, was, as a matter of law, guilty of contributory negligence. Deceased had brought his automobile under control on approaching Porter street, had looked towards the approaching car, and apparently had reached the conclusion that there was ample time to cross in safety. From the fact that the automobile was struck at the hub of the rear wheel it is apparent that, had the car been going at almost any speed less than its extreme limit on a down grade, his judgment would have been correct. In such cases the question is one for the jury.

3. Some complaint is also made concerning the charge of the court, and that the verdict is against the weight of the evidence. In view of our conclusion that the question of the negligence of the defendant and the contributory negligence of plaintiff's intestate were questions properly to be submitted to the jury, an ex-

amination of the charge is convincing that the issues thus presented were clearly and fairly presented to the jury with proper instructions, and there was sufficient evidence to sustain the verdict. The court did not err in denying the motion for a new trial based on this ground.

We find no error, and the judgment is therefore affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.