FISCHER *v.* MICHIGAN RAILWAY CO.

1. STREET RAILWAYS—CONTRIBUTORY NEGLIGENCE—AUTOMOBILES—CROSSING ACCIDENT—QUESTION FOR JURY.

In an action against an interurban electric railway company for damage to plaintiff's automobile, caused by a collision with defendant's car, on a public highway at the entrance to a park, which was well lighted, evidence that after the engine of the automobile was stalled while making the crossing, it was there for 10 or 20 minutes before being struck, and that a friend who was assisting to extricate the machine ran down the track about 75 feet and swung his arms, but the motorman paid no attention to him, raised a question for the jury as to whether the driver of the automobile was guilty of contributory negligence in failing to make greater effort to warn the motorman.

2. SAME—NEGLIGENCE—OPERATION OF CAR—INTERURBAN CARS—RULE.

The rule that it is the duty of a motorman on an electric car to have the car under such control as to admit of its being stopped after he became able to discover an object on the track and before a collision with such object should occur, applies to interurban railways as well as to city street cars. *Nissly* v. *Railway Co.*, 168 Mich. 676.

3. SAME—QUESTION OF LAW.

Where the motorman testified that the speed of his car was such that it could not be stopped within the range of his vision, defendant was guilty of negligence as a matter of law.

4. HIGHWAYS AND STREETS—USE OF HIGHWAY—NEGLIGENCE.

Persons traveling on foot and by vehicle have a right to travel upon the highway, and every part of it, and its use by one mode of travel must not be such as to endanger the safety of other modes of travel.

Error to Kent; Brown, J. Submitted October 8, 1918. (Docket No. 2.) Decided December 27, 1918.

Case by Lewis C. Fischer against the Michigan Rail-

See notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 929; 39 L. R. A. (N. S.) 978; 46 L. R. A. (N. S.) 702.

way Company for damages to plaintiff's automobile. Judgment for plaintiff. Defendant brings error. Affirmed.

*Sanford W. Ladd* and *Justin R. Whiting* (*Warren, Cady, Ladd & Hill*, of counsel), for appellant.

*Barger & Hicks* and *Smedley & Linsey*, for appellee.

BIRD, J. On June 29, 1917, at about ten o'clock in the evening, one of defendant's interurban cars, known as the "steamboat express," operating between Grand Rapids and the Holland boat dock, collided with plaintiff's limousine which was stalled on defendant's tracks between Jenison Park and the Olympia Pavilion at or near Holland. A jury in the Kent circuit court assessed plaintiff's damages to his automobile at the sum of $990.85. Defendant reviews the proceedings and complains of the refusal of the trial court to direct a verdict in its behalf.

1. Plaintiff's contributory negligence. One of the grounds upon which defendant based its motion was the contributory negligence of the driver. Defendant's double track system extends along the center of an east and west highway at the point where the collision occurred. Jenison Park lies at the north of the highway and the Olympia Pavilion is situate on the south. Plaintiff's automobile was in the possession of his brother, Ed. Fischer. He had as his guests in the car two ladies and one gentleman. They had visited the pavilion and were intending to cross defendant's tracks to reach the traveled part of the highway. Just as the front wheels passed over the south rail of the south track Fischer killed his engine. The engine was soon started but the rear wheels settled into the dirt and sand, which had been filled in for a cross-over, and he was unable to start it. While efforts were being made to extricate the automobile

the steamboat·express came along and crashed into it. From the time the limousine became stalled until the collision occurred, variously estimated at from 10 to 20 minutes, the driver was actively engaged in trying to release it. Friends came from the pavilion and assisted him. The ordinary difficulties of releasing a 4,000 pound automobile under such circumstances were considerably increased by a heavy rainfall.

Counsel freely criticises the conduct of Fischer and the other occupants of the car, but he does not suggest what further they could have done to avert the collision except to say that Fischer could have made a better effort to flag the car. As Fischer was driving on to the south track the steamboat express from Grand Rapids passed to the west over the north track, and counsel says that he knew it would return from the dock in a few minutes and he should have made a better effort to warn the motorman. The record shows in this connection that one Moran, who was assisting Fischer in his effort to release the car, upon hearing the whistle of the approaching car, ran down the track about 75 feet and swung his arms, but the motorman paid no heed to it. The location where the collision occurred was well lighted. In front of the pavilion at the south and at the entrance to the park on the north there were many electric lights. It was a place where pedestrians and automobiles were passing frequently in the summer months. Fischer had little reason to expect that a motorman would approach a place of this character driving his car at a rate of speed which would preclude him from stopping it within a limited space if it became necessary, and evidently it was a rule of the company that cars should approach this place with caution, as it had posted warning signs along the track in that vicinity, reading: "Go slow." "Slow down." We are of the opinion that the question whether Fischer was negligent

in failing to make a greater effort to warn the motor-
man was under all the circumstances a question for
the jury.

2. The negligence of defendant. The motorman tes-
tified in substance that on account of the storm he did
not see the automobile until he was within two or
three car lengths of it, or about 120 or 180 feet; that
when he first saw the car he was running at the rate
of 15 or 20 miles an hour, and that running at that
rate of speed it would require 400 feet in which to
stop.

Based upon this testimony, the trial court instruct-
ed the jury that defendant was guilty of negligence
as a matter of law because, under the motorman's own
concessions, the speed of his car was such that it
could not be stopped within the limit of his vision.
This conclusion was rested on the cases of *Ablard* v.
*Railway*, 139 Mich. 248, and *Hibbler* v. *Railway*, 172
Mich. 368.

It was said in the *Ablard Case* that:

"It was the duty of the motorneer to have the car
under such control as to admit of its being stopped
after he became able to discover objects on the track
and before a collision with such object should occur."

In the *Hibbler Case* this rule was quoted, approved
and applied to the facts of that case. Counsel rec-
ognizes the rule in these cases but seeks to distinguish
them from the present one on the ground that these
cases arose in a city street where traffic is more or
less dense and congested, and he argues that condi-
tions are different with interurban railways and there-
fore the rule should not apply to them. There is some
force in this distinction, but the difficulty of giving it
effect lies in the fact that this court has already ap-
plied this rule to interurban railways. *Nissly* v. *Rail-
way Co.*, 168 Mich. 676.

In the case cited a recovery was sought for the

killing of a colt which ran onto the track in front of the car. Excessive speed was charged as negligence. It was there said:

"This motorman was not bound to anticipate that plaintiff's horse would be at large or concealed behind a tree, and therefore owed no duty to reduce his speed of what would otherwise be reasonable. It is undeniable, however, that if his rate of speed was unreasonably great, it would be negligent, and we are of the opinion that if the motorman was running his car so fast that he could not have stopped it within the distance that this colt could have been seen upon a straight track, the jury might have been justified in finding this speed unreasonable. * * *

"This motorman was not bound to anticipate that a colt would be at large and come suddenly upon the track so near that the car could not be stopped in time to avert an accident, and, if his speed was not such as to have precluded the stopping of the car within the distance that such an object could have been seen upon the track that night, there was no negligence. This was, however, a question for the jury." Citing the case of *Gilmore* v. *Railway Co.*, 153 Pa. 31 (25 Atl. 651, 34 Am. St. Rep. 682), and 2 Nellis on Street Railways (2d Ed.), § 515.

We must conclude, therefore, that this rule applies to the operation of interurban cars as well as to city street cars. The testimony of the motorman concedes that he violated this rule, therefore the action of the court in charging the jury that defendant was guilty of negligence as a matter of law must be sustained. Had any question of fact been involved, as in the *Nissly Case*, which was necessary to be determined before the rule could be applied, the question would have been one for the jury. When, however, the motorman comes into court and admits that he did an act which this court has said is a negligent act, there is no occasion to submit the question to a jury.

Counsel observes that this rule is a harsh one to apply to interurban traffic in view of the public de-

mand for rapid transit. The fact must not be over-looked that we are dealing with an interurban railway located in the public highway and not one on a private right of way. Persons traveling on foot and by vehicle have a right to travel upon the highway and every part of it, and its use by one mode of travel must not be such as to endanger the safety of other modes of travel. As long as interurban companies are content to locate their lines upon public highways, they must yield to reasonable regulations for the protection of others who have a right to use them.

The judgment must be affirmed.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.