GOLOB *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE JURY QUESTION.

Whether the driver of an automobile was guilty of contributory negligence in turning across defendant's street car tracks and backing up on the pavement for the purpose of turning around, *held*, a question for the jury under testimony that the approaching street car was far enough away to allow him to do so safely had not the front wheel caught in a space between the rail and the planking and stalled the engine.

2. NEGLIGENCE—WHEN CONTRIBUTORY NEGLIGENCE A QUESTION OF LAW.

To justify a finding of contributory negligence as a matter of law, the evidence should be such that all reasonable minds should reach the same conclusion.

3. STREET RAILWAYS—NEGLIGENCE—GROSS NEGLIGENCE—LAST CLEAR CHANCE.

A railway company is liable for injuries resulting from a collision of one of its negligently operated cars and an automobile on its track, regardless of the negligence of the driver of the automobile if the motorman operating its car, knowing of the perilous position of the automobile, could by the exercise of ordinary care and vigilance have prevented the collision.

4. SAME—GROSS NEGLIGENCE QUESTION FOR JURY.

Evidence that when the automobile stalled on defendant's tracks, the street car was 300 feet away and could have been stopped in from 60 to 80 feet, but that the motorman made no effort to stop until within 30 or 40 feet of the automobile, *held*, sufficient to carry to the jury the question of defendant's subsequent or discovered negligence, even though plaintiff was guilty of antecedent negligence.

Error to Wayne; Moynihan (Joseph A.), J.    Sub-

On duty of operator of automobile when near street car tracks, see note in 38 L. R. A. (N. S.) 493.

mitted April 9, 1924.    (Docket No. 12.)    Decided July 24, 1924.

Case by Harry Golob against the Detroit United Railway for personal injuries.    Judgment for defendant on a directed verdict.    Plaintiff brings error. Reversed.

*Dwyer & MacPherson*, for appellant.

*William E. Tarsney*, for appellee.

STEERE, J.    Plaintiff was injured in a collision between the Ford sedan in which he was riding and one of defendant's interurban cars.    He brought this suit to recover damages for the injuries which he then received, and upon the trial a verdict was directed by the court in favor of defendant on the ground of his contributory negligence.    The question involved here is whether, viewing plaintiff's evidence in the most favorable light, the case should have been submitted to the jury.    The accident occurred on Woodward avenue in the city of Detroit at about 7:30 o'clock in the evening of March 26, 1922, between the 7 and 8-mile road near the Evergreen cemetery which lies on the west side of Woodward avenue.    Plaintiff was out riding with a friend named Gurian, who owned the auto.    He sat on the right side of the rear seat and Gurian's little daughter on the right front seat, while Gurian sat in front on the left side, driving. They rode north out Woodward avenue to the vicinity of the cemetery and were turning around to go back towards the center of the city when the accident occurred.    That portion of Woodward avenue was paved 18 feet wide.    At the place Gurian selected to turn back there was a crossing leading into the cemetery over defendant's double line of tracks which were on the west side of the paved portion of the

avenue, the rail farthest east being about 4 feet from it, the space between being filled up level with the top of the rails and pavement.    Defendant's tracks were planked between the rails.    The planking was laid lengthwise level with the rails.    In going north out Woodward avenue Gurian drove on the right or east side along the pavement.    Before starting to turn back he stopped and both he and plaintiff looked to the rear to ascertain if any car was approaching from that direction, plaintiff taking his view through the rear window of the sedan.    They saw a car coming some distance away, stated by plaintiff as about 2 or 2½ blocks.    Gurian judged the distance was 500 or 600 feet, and estimated that at the speed it was coming he had time to turn around and get back to the pavement in safety.    He then started to turn and continued until he was near the track at which time, as he stated, the car was about 300 or 325 feet away and as he swung over the edge of the track his right front wheel caught between the easterly rail and planking, stopping his auto and stalling his engine.    The motorman whistled but did not slacken speed until his car was within 30 or 40 feet of the stalled automobile, and was then unable to do so before he struck it, but stopped some 30 or 40 feet beyond. When the auto stalled plaintiff seized the little girl before him with his left hand, lifted the right front seat out of the way and opened the door with his right hand but had difficulty in getting through the door and was unable to escape before the collision.

The errors assigned are refusing to submit to the jury the questions of plaintiff's and defendant's negligence, and also defendant's gross or subsequent negligence, which was also declared upon.    The questions before us are not whether as a matter of fact Gurian was free from contributory negligence and defendant negligent but whether there was evidence to carry those questions to the jury.

Gurian selected for making his turn a crossing where he had a smooth and level space to circle on, apparently free from any danger of trouble or delay. He was mindful that his car in turning might extend over the easterly rail of the track. He looked for a car and saw one coming such a distance away that he judged he could safely make the turn and get back on the pavement before it passed. His testimony is undisputed that he could and would have done so easily had not a space between the east rail nearest the pavement and planking adjoining it on the west caught his right front wheel and stalled his motor. At the worst this case falls within the class pointed out in *Hickey* v. *Railway*, 202 Mich. 496, with supporting citations, "where the plaintiff saw an approaching car and decided there was sufficient time to cross ahead of it, under circumstances which do not clearly show recklessness in the formation of such judgment" (citing cases).

It cannot be said that Gurian's failure to anticipate his car might be caught and stalled as shown on the apparently level crossing where the planking between the rails was flush with their top was, as a conclusion of law, contributory negligence.

"We have repeatedly stated that before such a conclusion can be arrived at, all reasonable minds should reach the same conclusion, that under all the circumstances the plaintiff's contributory negligence should bar recovery. See *Beach* v. *City of St. Joseph,* 192 Mich. 296, and cases therein cited." *Garland* v. *Railroad Co.,* 196 Mich. 695.

On the record in this case it was for the jury to decide as a question of fact whether Gurian acted as an ordinarily careful and prudent man would and should have acted under like circumstances.

Assuming plaintiff failed to show freedom from contributory negligence, the declaration alleges gross or discovered negligence on the part of defendant and the

doctrine of last clear chance is involved.   The general rule on that subject as applicable here ·is, in brief, that a railway company is liable for injuries resulting from a collision of one of its negligently operated cars and an automobile on its track regardless of the negligence of the driver of the automobile if the motorman operating its car, knowing of the perilous position of the automobile, could by the exercise of ordinary care and vigilance have prevented the collision.   The following are some of the cases in this State dealing with that subject in its various aspects:

*Laethen* v. *Railway Co.,* 100 Mich. 297; *Fritz* v. *Railway Co.,* 105 Mich. 50; *McClellan* v. *Railway Co.,* 105 Mich. 101; *Bedell* v. *Railway,* 131 Mich. 668; *Ablard* v. *Railway,* 139 Mich. 248; *Mertz* v. *Railway,* 125 Mich. 11; *Morse* v. *Railway Co.,* 168 Mich. 99; *Hibbler* v. *Railway,* 172 Mich. 368; *Wingert* v. *Railway,* 177 Mich. 199; *Calvert* v. *Railway,* 202 Mich. 311; *Hickey* v. *Railway,* 202 Mich. 496; *Fischer* v. *Railway Co.,* 203 Mich. 671; *Niman* v. *Railway,* 214 Mich. 456; *Orlowski* v. *Railway Co.,* 222 Mich. 580; *Gibbard* v. *Cursan,* 225 Mich. 322.

On that evening the lights of the automobile and defendant's car were burning.   Gurian saw the car when he started to turn, and testified that when his auto stalled on the track it was about 300 or 325 feet away with its headlight shining directly upon him, that the motorman then sounded his whistle but did not check his speed or attempt to stop his car until within 30 or 40 feet away and stopped it within 30 or 40 feet after striking the stalled auto.   An apparently disinterested witness named Kanagur, who was a real estate dealer in Detroit, testified that he was driving in his auto north along Woodward avenue that evening on the way to Pontiac, running about 15 to 17 miles an hour and abreast of the car which struck the automobile for a block or so and when within about a block and a half of Evergreen

cemetery the car seemed to increase its speed and passed him.   He heard its whistle sounded about that time, and noticed an automobile ahead turning to the left, saying in part:

"They had their turn made, apparently, and I was pretty near a block away from the accident when it happened, and they were stalled on the track.   *   *   * And the car kept on going and had not made any attempt to stop until they got pretty close up to them.   *   *   *   About the same rate of speed until she got about 30 to 40 feet or around that neighborhood when I heard her—she made a kind of move with her reverse, whatever it may be—was trying to make an attempt to stop there, but it was too late, she passed them about 30 or 40 feet the other side and tipped the car right over.   *   *   *   The automobile was knocked over on the pavement—knocked over flat. *   *   *   The automobile was moving when I first saw it and also in the act of making the turn.   It stopped still.   It was over the track when it stopped still. *   *   *   The whistle blew when the automobile was on the track.   *   *   *   When I saw the accident was likely to happen I increased my speed.   I was pretty close to it when it happened.   *   *   *   The interurban went, after it struck the automobile, about 30 or 40 feet.   *   *   *   The rear of the interurban was about 20 or 30 feet from the rear of the car."

Plaintiff's evidence tends to show that when the turning automobile stalled and stopped on the track the motorman could have stopped his car at the speed he was going within a distance of 60 to 80 feet; that he was then from 300 feet to a block and a half away and sounded his whistle, but kept right on at the speed he was going until within 30 or 40 feet of the automobile before he attempted to slacken or stop his car.   It was his duty when the situation of the automobile became apparent to him to reduce his speed and have his car under control so that he could stop if necessary and avoid the accident.   There was abundant evidence of defendant's subsequent or dis-

covered negligence to carry the case to the jury, even though plaintiff should be found guilty of antecedent negligence which put him in a position of danger.

The judgment is reversed, with costs to plaintiff, and a new trial granted.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.