HILTS v. FOOTE.

STREET RAILWAYS — COLLISION WITH VEHICLE — NEGLIGENCE OF DRIVER.

*T., the driver of a milk wagon, invited H., the deceased, to ride with him. T. drove his wagon at a speed of between five and six miles an hour from one street across another, along which defendant had an electric street railway with a single track. He did not check the speed of his horse on approaching the track, or look for an approaching car, until he was so near that he thought the safest way was to attempt to cross before the car would reach him. Instead of stopping, he whipped up his horse, and, as his wagon was on the track, it was struck by the car, and H. was killed. T. had ample time and opportunity to look for the car, stop, and thus avoid the collision. Held, that he was guilty of contributory negligence, and therefore plaintiff could not recover.

Error to Jackson; Peck, J. Submitted October 9, 1900. Decided November 13, 1900.

Case by Sarah L. Hilts, administratrix of the estate of Frederick Hilts, deceased, against William A. Foote, receiver of the Jackson Street-Railway Company, for the alleged negligent killing of plaintiff's intestate. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

East Main and Perrine streets in the city of Jackson cross each other at right angles; the former running east and west, the latter north and south. Upon East Main street the Jackson Street-Railway Company has a single track, along which its cars are propelled by electricity. On the day of the accident a car was approaching from the east. One Eugene Thompson was the driver of a milk wagon, and was then engaged in delivering milk to vari-

---

* Head-note by GRANT, J.

ous places in the city. The wagon was covered, and had openings on the sides 20½ inches wide and 53 inches high. The seat was just back of these openings, so that the knees of the driver came about opposite them. Thompson met the deceased, Frederick Hilts, a young man 27 years of age, and invited him to ride with him. They were riding north on Perrine street, and when the wagon was upon the track it was struck by a car, and Hilts was killed.

Main street is 99 feet wide, 63 feet between the curbing, and the distance from the curb to the center of the car track is 31½ feet. One standing or riding in the center of Perrine street, 18 feet south of the south line of the sidewalk, can see a car coming from the east on East Main street one block,—about 320 feet. On approaching 6 feet nearer, the car can be seen three blocks east, and when at the curb the car can be seen 104 rods east.

Thompson testified that his horse was on a good, fair trot; that he first noticed the car when he was just across the sidewalk; that when he got about to the sidewalk he looked west, saw no car, then turned to look east; that by that time he had got across the walk, saw a car coming, and was afraid it was going to strike him; whipped up his horse, and tried to get across. On cross-examination he testified that he should judge he was driving at the rate of five miles an hour, perhaps more; that he and the deceased were chatting along about various things; that the first time he thought to look for the cars was as he was nearing the cross-walk; that he did not slack his horse at all when he came to the street, but just kept right on,—was anxious to get through, and his mind was intent upon that; that he had got as far as the curbing, anyway, when he looked east. He further testified as follows:

"Q. You have seen the street car running enough so you could tell this was running very rapidly?

"A. Yes, sir.

"Q. And about where was it then,—how close to you?

"A. I don't know exactly just where it was,—how far it was away.

"*Q.* Was it pretty close?

"*A.* Not so very.

"*Q.* But it was so close that when you first saw it you were afraid it would run onto you? You said you were afraid the car would run onto you when you saw it?

"*A.* When I first saw the car, I thought it was so close, if I didn't hustle and get across, it would run onto me.

"*Q.* You thought, if you didn't hurry up, the car would run onto you?

"*A.* Yes, sir.

"*Q.* So you hurried up?

"*A.* Yes, sir; I didn't want to get run onto.

"*Q.* You reached over, and took the whip out of the socket, and struck the horse?

"*A.* Yes, sir.

"*Q.* This whip was on the right-hand side, in front of Hilts?

"*A.* Yes, sir.

"*Q.* So that you had to reach some distance to get over to it?

"*A.* Yes.

"*Q.* Did you strike the horse more than once?

"*A.* I think not.

"*Q.* You thought, when you struck the horse, you would be able to get across?

"*A.* I thought so.

"*Q.* Did the horse make any considerable spring?

"*A.* Why, it run along fast.

"*Q.* It looked to you as if, if you hurried up a little, you would be able to get across without any trouble?

"*A.* Yes, sir.

"*Q.* So you didn't try to stop?

"*A.* I didn't have time to stop.

"*Q.* I say you did not try to stop?

"*A.* No, sir; I didn't.

"*Q.* And you did not try to turn either way?

"*A.* No, sir.   *   *   *

"*Q.* Of course, you might have stopped the horse, couldn't you?

"*A.* Sir?

"*Q.* You could have stopped the horse at that time?

"*A.* It could have been stopped; yes. I don't think I could have stopped it before I got on the track.

"*Q.* You don't think you could have stopped it before you got onto the track?

"*A.* I don't believe I could.

"*Q.* You could before the wagon got on the track?

"*A.* I might possibly.

"*Q.* You could have sacrificed the horse if you had wanted to?

"*A.* If I saw fit, if I had time to consider, and known what was going to happen, I could.

"*Q.* You did not stop to consider about anything except to get across?

"*A.* I say I didn't have time to stop before on the south side of the track; so all the thing I could do was to get across,—or the best thing I could do.

"*Q.* You considered that, did you?

"*A.* In a minute. It came to me at once. I looked around, and did not see anything to do but to get across to be safe.

"*Q.* You didn't think of anything else but getting across?

"*A.* I tried to think whether I might stop or not.

"*Q.* You tried to think whether you could stop or not?

"*A.* I kind of thought a minute, and all the thing I could do was to get across, and tried to.

"*Q.* You didn't think you could pull your horse as quick as you could reach over and get a whip and strike him?

"*A.* No, sir; I didn't.

"*Q.* That didn't occur to you, did it?

"*A.* Why, I tried to think whether I could stop or not, and I didn't think I could, the distance I was, and the way the car was coming.

"*Q.* You could have seen that car, if you had looked, before you got on the sidewalk, couldn't you?

"*A.* I don't know; I don't think I could; no.

"*Q.* Have you ever looked to see?

"*A.* I have; yes.

"*Q.* You could have seen that car by the time your wagon, at least where you sat, got on the south cross-walk?

"*A.* I might have seen the car by the time I got on the sidewalk.

"*Q.* You can see to State street?

"*A.* From the sidewalk?

"*Q.* Before you got on the cross-walk, can't you?

"*A.* I don't think a person can.

"*Q.* What?

"*A.* I don't think he can.

"*Q.* Have you ever looked to see?

"*A.* I noticed, but I don't remember just now whether I could or not.

"*Q.* Don't you know that when you get on the crossing of this street you can see far above State street?

"*A.* I might, possibly, from the walk.

"*Q.* Yes, from the walk you can see up pretty well towards East avenue, can't you?

"*A.* I think I could.

"*Q.* So that, had you looked when you were on the crossing, you could have seen this car, although it was as far east as East avenue?

"*A.* I could not say as I could have as far as East avenue, but I might possibly.

"*Q.* Nearly as far as that? Isn't that your recollection of it?

"*A.* I might possibly have seen it close to that, if not to East avenue.

"*Q.* State street is two blocks away, isn't it?

"*A.* One or two.

"*Q.* What? Is it two or three blocks?

"*A.* It is either two or three.

"*Q.* Three blocks, isn't it?

"*A.* Three blocks, I think it is.

"*Q.* So that, if you had been thinking about a car when you came on there, and looking for it to the east, of course you would have had ample time to stop your horse?

"*A.* Yes, if I had looked east first."

The court directed a verdict for the defendant.

*Richard Price* (*Charles A. Blair*, of counsel), for appellant.

*Wilson & Cobb*, for appellee.

Grant, J. (*after stating the facts*). We think the instruction was correct. The learned circuit judge fully stated to the jury his reasons for his direction. After stating the rule as he deduced it from the authorities, he said:

" Now, applying this rule to the evidence we have before us, it seems to result here, from any view of the testimony which can fairly be taken, that it was negligence, and I

think contributory negligence, for the driver of the milk wagon, Thompson, to attempt to make the crossing in front of the street car at the time and in the manner he did.    And this, I think, must be held to appear conclusively from the evidence in the case.    Indeed, no other conclusion can be drawn from the evidence without doing violence to the law of the land as given to us by the Supreme Court of this State, and doing violence equally to our common sense and judgment as applied to the facts, which are beyond dispute.    It must, therefore, be held that in this case the driver of the milk wagon, Thompson, was guilty of contributory negligence in attempting to make the crossing in front of the approaching street car, under the circumstances and in the manner and at the time he did, as shown by the evidence."

It is manifest from this record that Thompson drove upon East Main street without slacking his speed, without looking for the car until he was so near the track that he thought it impossible to stop his horse before the car would strike him.    He was responsible for the situation.    Even where there are no street cars, a party driving from one street into and across another is bound to be on the lookout for teams traveling along the street, and to keep his horse under control.    Thompson had ample time to look both west and east in time to see the approaching car and stop so as to avoid the accident.    It was his duty to do this.

There is nothing in the record to justify the conclusion that the motorman deliberately and recklessly ran Thompson down after seeing that he was in danger.    There is no evidence upon which to charge such inhuman conduct upon the motorman.

Judgment affirmed.

The other Justices concurred.