## HEBBLETHWAITE *v.* DETROIT UNITED RAILWAY.[1]

STREET RAILROADS — PERSONAL INJURIES — STREET CROSSINGS — CONTRIBUTORY NEGLIGENCE — FAILURE TO STOP, LOOK, AND LISTEN.

Where plaintiff, having stopped his horse and looked for an approaching street car at a point where he could see 75 to 100 feet up the track, and seeing no car, proceeds to cross the track, he is not guilty of contributory negligence, as a matter of law, in failing to again stop his horse to look for an approaching car, after he has passed a projecting awning on an adjoining store building which obstructed his view, and when his horse's feet would be within four feet of the rail and the horse's head within two feet of the track, and on a line with the projecting car body.

GRANT and BLAIR, JJ., dissenting.

Error to Wayne; Rohnert, J. Submitted January 9, 1906. (Docket No. 41.) Decided July 9, 1906.

Case by John H. Hebblethwaite against the Detroit United Railway for personal injuries. There was judg-

---

[1] Rehearing denied December 17, 1906.

ment for defendant on a verdict directed by the court, and plaintiff brings error.   Reversed.

Hastings and Mullett streets, in the city of Detroit, cross each other at right angles; Hastings running north and south.   Hastings street is 50 feet wide.   Mullett, as appears from the plat in the record, is a little narrower. Defendant's track runs in the center of Hastings street. At the northeast corner of the two streets is a brick store, built close to the street lines.   It has a window on Mullett street at the corner.   On Hastings street in front of the store is an awning extending 5.8 feet beyond the lot line and 6.9 feet above the sidewalk.   Attached to the lower edge of the awning is a flap 1 foot wide.   When the awning is raised, one approaching Hastings street on Mullett street from the east can look through the windows of the store to the north on Hastings street.   The distance from the east rail of the track to the outer edge of the awning is 16.7 feet.

Plaintiff was riding westerly on Mullett street, on the north half, but near the center.   He was driving a light delivery wagon drawn by one horse.   The awning was down.   He testified that he stopped as he approached and entered the line of Hastings street, leaned forward, looked and listened, neither saw nor heard a car, and proceeded to drive across; that he first saw the approaching car when about 75 feet distant; that the forefeet of his horse were then on the west rail.   He then hurried his horse across, but the roof of the car struck the roof of his wagon about two feet from the hind end.   He was thrown from his wagon and injured.   He alleges four grounds of negligence: (1) Failure to sound the gong; (2) an unreasonably high rate of speed; (3) the dangerous nature of the crossing; (4) the inattention of the motorman just before the collision.   His declaration alleges that he "checked his horse so that the same came almost to a stop."   Some of his witnesses testified that he did not stop, but simply

slowed down, while one testified that he did not slow up, but "jogged along at his usual pace."

The judge found as a fact, and so stated to the jury, that, according to plaintiff's own testimony, the horse's head when he stopped was 4 feet from the east rail, and in that position plaintiff could look up Hastings street "as far as his eyesight would reach." He testified, however, that from where he stopped he could look up the street only about 75 or 100 feet. The judge also found that, when approximately 19 feet from the east rail, plaintiff had a view of 125 feet up the street. The court therefore instructed the jury:

"The plaintiff either stopped at a place where he could have seen away up the street, or else he stopped at a place where he could not see as the law requires; and there was sufficient space between the rail and the place where he could see and be safe for him to see and act cautiously, as a prudent man should act in crossing that track."

The defendant gave no testimony, and the court directed a verdict upon the case made by the plaintiff.

*David E. Heineman,* for appellant.

*Corliss, Leete & Joslyn* and *Paul B. Moody,* for appellee.

GRANT, J. (*after stating the facts*). The reciprocal rights and duties of travelers at the intersection of streets has been frequently discussed in this court. It is the duty of the motorman to watch, and, so far as practicable, keep his car under control. On the other hand, it is the duty of the traveler to be alert. He is chargeable with notice that the street cars must travel at a higher rate of speed than ordinary vehicles; that they are heavy and cannot stop as soon as other vehicles; that they cannot turn aside; and that the only method of avoiding collisions is to stop. This court, speaking through my Brother MONTGOMERY, said:

"It is incumbent upon the driver of a vehicle before attempting to turn across the track to take proper means of ascertaining whether the way is clear, and this is especially true of the attempt to turn across the track in the middle of a block, or at any place other than a regular crossing." *Fritz* v. *Railway Co.*, 105 Mich. 50.

See, also, *Hilts* v. *Foote*, 125 Mich. 241; *McGee* v. *Railway Co.*, 102 Mich. 107, 112 (26 L. R. A. 300).

Plaintiff was familiar with the situation and the danger. He had driven daily for some time over this place, and without any inconvenience could have informed himself of the approach of the car. If he could not from the place where he stopped see the car, he knew that the motorman could not see him. If he stopped with his horse's head a few feet from the track and the motorman saw the horse, he (the motorman) would have been justified in acting upon the belief that the horse would not be driven across until his car had passed.

Plaintiff produced two witnesses as to the speed of the car. One frankly testified that he could not tell the speed, but that the car was not going particularly fast. The other testified that it was going pretty fast, about 20 miles an hour. This witness was riding a bicycle. The street was rough. He was going in the opposite direction to the car. He met and passed it at the alley midway of the block. When he got to the next street, he heard a crash. It is thus clearly demonstrated that he on his bicycle was traveling at the same rate of speed as was the car. He testified that he could not tell how fast he was riding, but that it would be impossible for him to ride " on that rough pavement to exceed 10 miles an hour." Under this testimony there was no evidence that the car was going at an unlawful rate of speed.

No negligence can be imputed to the defendant on account of the dangerous nature of the crossing. It is only made dangerous by the narrow streets and the erection of buildings upon the street lines, so that the traveler must approach within a short distance from the track before he

can look along Hastings street and see approaching cars. Hundreds of such situations occur in the streets of cities. The situation, which is lawful, imposes greater care and watchfulness upon travelers in controlling vehicles as well as street cars.   At the intersections of streets where travel is congested policemen are frequently stationed to control the passage of vehicles and pedestrians.   Where the travel is not congested, every traveler and every manager and driver of vehicles, whether drawn by horses or propelled by electricity, or other motive power, must exercise due care and watchfulness.   The degree of care and watchfulness must depend upon the conditions surrounding each place.   There was ample room for plaintiff in this case to stop and look before placing himself in a place of danger by attempting to cross the track.   Had he done so, the accident would not have happened.   It was his duty to do so.   We think the case is ruled by *Merritt* v. *Foote*, 128 Mich. 367; *Doherty* v. *Railway Co.*, 118 Mich. 209; and *Hilts* v. *Foote*, supra.   See, also, *Borschall* v. *Railway*, 115 Mich. 473.

It is, however, claimed that the motorman at the time the plaintiff was upon the track was for the moment inattentive and looking in another direction.   If this were so, that would not excuse the act of the plaintiff in attempting to cross the track in front of the approaching car.   Neither would the failure of the motorman to sound the gong excuse such act.   In such case the negligent act of each would have contributed to the accident, and neither party, if injured, could recover against the other.

Judgment should be affirmed.

BLAIR, J. I concur in the result reached by Mr. Justice GRANT. As the majority are of a contrary opinion, I do not express my own views at length.

MONTGOMERY, J. The question presented by this record is whether the plaintiff, having stopped his horse and looked for an approaching car at a point where he could

see 75 to 100 feet up the track, was as a matter of law guilty of contributory negligence in failing to again stop his horse to look for an approaching car after he had passed the projecting awning with his buggy, and when the horse's forefeet would have been within 4 feet of the rail of defendant's track and the horse's head within 2 feet of the track and on the line of the projecting car body.

In *Ryan* v. *Railway Co.*, 123 Mich. 597, the plaintiff before crossing the track looked in the direction from which the car approached, and saw no car, and thought that was far enough to look to make the attempt to cross safe. In an opinion in which the distinction between steam railroads and electric street railways, noted in *Garrity* v. *Railway Co.*, 112 Mich. 369 ( 37 L. R. A. 529), was again stated, it was held that the question of plaintiff's negligence was for the jury. That case should rule this case. See Booth on Street Railway Law, § 304.

The judgment should be reversed, and a new trial ordered.

CARPENTER, C. J., and MCALVAY, OSTRANDER, HOOKER, and MOORE, JJ., concurred with MONTGOMERY, J.