PUFFER v. MUSKEGON TRACTION & LIGHTING CO.

1. STREET RAILROADS — AUTOMOBILES — CONTRIBUTORY NEGLIGENCE.

Plaintiff was guilty of contributory negligence precluding a recovery for damages done to his automobile in crossing defendant's street car tracks, where his own testimony showed that he looked for a car and saw none approaching, after which he proceeded nearly 60 feet and turned across the tracks in front of an on-coming car, without again looking down the track which was straight and unobstructed for a distance of 600 feet.

2. EVIDENCE—CROSS-EXAMINATION—RATE OF SPEED.

To prove the rate of speed of defendant's car it was not competent, after cross-examining one of defendant's motormen who testified generally that all its cars ran at the same rate in the vicinity of the place of the accident, to show by another witness that the witness had timed one of defendant's cars at that point on a certain occasion and it ran at the rate of 25 miles an hour.

MOORE, C. J., and BIRD, J., dissenting.

Error to Muskegon; Sullivan, J. Submitted June 10, 1912. (Docket No. 69.) Decided December 17, 1912.

Case by Floyd Puffer against the Muskegon Traction & Lighting Company for damages to plaintiff's motor car.

Judgment for plaintiff. Defendant brings error. Reversed.

*Cross, Vanderwerp, Foote & Ross,* for appellant

*Turner & Turner,* for appellee.

Brooke, J. I am of opinion that the conclusions reached by my Brother, the Chief Justice, are not warranted by the facts disclosed in this record. Mr. Justice Moore quotes plaintiff's testimony on direct examination. On cross-examination he testified, in part, as follows:

" When I got down in front of Kraft's saloon, I then looked to see if there was any car coming. Kraft's saloon is on the corner of Hall and Ottawa streets. I should say I was about the middle of the saloon when I attempted to look back. I think Kraft's saloon is about 33 feet wide. When I was in front of the saloon—about the middle of it—I attempted to look back. I had a top on my machine. The top was down the back. This top on the back would interfere with looking back. When I looked back, I was facing towards the east on Ottawa street. I did not stop the machine. I looked right around the side like that (illustrating), and I could see, I should think, to where Vincent's store is. There were braces on each side of the top. I just put my face up to the braces and looked back. It is a one-seated, and I was sitting on the right-hand side of the car. I should think the seat was 3 feet wide. I bent over and looked to the left. I didn't move out of my seat. I kept my hand on the steering gear all the time. I didn't see any car coming. I was running at the rate of 8 or 10 miles an hour then. After I looked back just before I got to Hall street, I noticed the hole in the pavement. I went around it, and turned to the right further than I had any time before coming down Ottawa street, in order to miss the hole. I got within about a foot of the gutter. I then went across Hall street pretty well on the right-hand side until I got past the center of Hall street towards the curbing on the other side; that was two-thirds of the way across Hall street. Then I turned to the left to cross the track.

"*Q.* Now, the time that you had looked down the track

was down there just before you had reached that hole, wasn't it?

"*A.* Just before I got to the hole.

"*Q.* You didn't look any other time?

"*A.* No, sir.

"*Q.* That was that time in front of Kraft's saloon?

"*A.* Right in front of the saloon. After I turned across the track, it was about 6 or 8 feet from the time I turned until the front wheels were on the track. I have lived here in Muskegon some time to know about the running of street cars, where they run, and how often they run. I knew that the cars run down there about every 15 minutes. From Hall street to Vincent is 195 feet, probably."

Assuming that plaintiff's observation when he looked back was a proper and adequate one, which may well be doubted from a perusal of the foregoing, it is still apparent that he cannot recover. When he looked back, he says he was at the middle of Kraft's saloon, which is 33 feet wide. He therefore traveled one-half this distance, 16½ feet, plus two-thirds of the width of Hall street (which is 55 feet wide), 36 feet, plus 6 or 8 feet after he turned to cross, making a total of 58 or 60 feet. He traveled this entire distance and drove his car upon defendant's track without again assuring himself that he could do so with safety, when a glance would have shown him that the car was in dangerous proximity. It was broad daylight, he was entirely familiar with the situation, and there was an unobstructed view of straight track for 600 feet. When plaintiff made his observation, he could have seen the car, had he taken a position far enough to the left-hand side of his machine to permit him to get an unobstructed view of the entire block. But, in any view we may take of his care or lack of care in making this observation, we must hold that in driving the distance he did drive thereafter, and going upon the track of defendant without again assuring himself that it was safe to do so, he was guilty of contributory negligence, as a matter of law. *Fritz* v. *Railway Co.*, 105 Mich. 50 (62 N. W. 1007);

*Stevenson* v. *Railway*, 167 Mich. 45 (132 N. W. 451), and cases there cited.

The witness Baker was permitted to testify that he had timed one of defendant's cars upon a day different from that upon which the accident occurred, and that it ran 25 miles per hour. The testimony was taken subject to objection and exception. The court permitted the answer only after the following evidence was introduced by plaintiff:

" Charles Vandenberg, recalled for further cross-examination by Mr. W. J. Turner, under the statute, was examined, and testified as follows:

" '*Q.* All these cars operated on the Ottawa street line run at the same rate of speed, do they not?

" '*A.* Yes, sir.

" '*Q.* And how long had you been on that Ottawa street line?

" '*A.* How long?

" '*Q.* Yes; how long had you been?

" '*A.* We worked there off and on at different times.

" '*Q.* I mean how long had you been before October, up to this time? In October how long had you been working there steadily?

" '*A.* We don't work there steadily, only just as the regular crews lay off.

" '*Q.* But you do know that they all run at the same rate of speed?

" '*A.* Yes, sir.

" '*Q.* Between the Steiner House and all this distance that you cover?

" '*A.* Yes, sir.' "

It is obvious that the witness Vandenberg, who was the motorman in charge of the car at the time of collision, could not know the rate of speed at which other cars of the defendant were run at all times. This evidence was valueless as a foundation for the incompetent testimony of the witness Baker.

The judgment should be reversed and a new trial granted.

STEERE, McALVAY, STONE, and OSTRANDER, JJ., concurred with BROOKE, J.

MOORE, C. J. (*dissenting*). This case was commenced in justice's court and appealed to the circuit court, where a verdict for $100 was rendered by a jury in favor of the plaintiff. From a judgment entered upon this verdict, the case is brought here by writ of error.

It was the claim of the plaintiff that, as he was about to cross the car track of defendant company, his automobile was injured by a street car under such circumstances as to entitle him to the judgment he obtained.

The claim of the defendant is stated by its counsel as follows:

" The defendant has appealed from that judgment, and asks for a reversal of the case on account of certain errors, which, for the purpose of this brief, can be grouped as follows:

"(1) By the court overruling defendant's motion to direct a verdict in its favor.

"(2) In the refusal by the court to give defendant's requests to charge.

"(3) In certain parts of the charge of the court as given and his neglect to properly instruct the jury as to what would constitute contributory negligence on the part of plaintiff and negligence on the part of the defendant.

"(4) In the admission of certain testimony of the witness Baker."

1. Should the trial court have directed a verdict in favor of defendant? The plaintiff testified the collision happened as follows:

" I was going in an easterly direction on the right-hand side of Ottawa street. It was from 20 minutes to half past 4. I did not hear any street car, nor the sound of any gong or bell. The street cars are equipped with a gong. I know where the Steiner House is on Ottawa street. It is about one block from there down to Hall street, but it is a long block. It is nearly as long as two blocks. When I got to Hall street, I attempted to cross. There was a hole in the pavement—Ottawa street is rough there—there was a big hole in the pavement, and the machine was short, and I turned out to the right-hand side of the street right close to the curb to miss that hole, and then I attempted to go across the street. I looked to

see whether a car was coming before I crossed. I looked both ways and did not see any car coming, and I did not hear the sound of any gong or bell. There is nothing the matter with my hearing. There was no bell or gong sounded. I turned out to the right, seeing the hole in the pavement, to the extreme right-hand side of the street, right close to the curb, and I was right in front of Kraft's saloon. Before I made the turn, I looked around, and I could see plainly ahead. There was none coming ahead, and I looked just about the time I was making this turn to the hole in the brick. That was probably not over 15 feet before I turned, and I looked like that (illustrating), and I didn't see no car, nor hear any, and I turned out to the right, and then I turned square across the track, or attempted to, and I got right in the center of the track, and just as I got midway there was a car right upon me. I didn't even have time to shut my motor off, or stop it in any way. The car struck me and slid me probably 15 or 20 feet from the time it struck me. The car struck my automobile right amidships. It struck the front wheel on the hub, or one side of it; and on the other side it swung the front end around like that (illustrating), and struck the high wheel and just shoved it right ahead in that manner (illustrating). It wrecked my machine."

There was testimony to the effect that the motorman never slackened the speed or sounded the gong until the automobile was struck, and that the car was running upwards of 18 miles an hour. On the other hand, testimony was given tending to show the car was running not more than 8 or 10 miles an hour, and that the gong was sounded. We think this presented a question of fact for the jury. *Hebblethwaite* v. *Railway,* 145 Mich. 13 (108 N. W. 433); *Putnam* v. *Railway,* 164 Mich. 342 (129 N. W. 860); *Clark* v. *Traction Co.,* 167 Mich. 694 (133 N. W. 927).

Two and three may be considered together.

The court charged the jury at length. Part of the charge reads as follows:

" In order for the plaintiff to recover, it is necessary for the plaintiff to show by a fair preponderance of the evidence that the acts of negligence that he claims, some or

all of them, did actually exist, and that it was through the acts of negligence that the injury occurred. Now, I have read what acts he claims, and he claims that because of the failure of the defendant to perform its duty under all the circumstances surrounding the case, and in accordance with what I have heretofore instructed you, that the defendant is liable for the injury. He must prove that . * * * by a fair preponderance of the evidence. * * * A fair preponderance of the evidence means such part of the evidence or the testimony which convinces you of the truth of the facts sought to be proved, just a preponderance. If the evidence, after you have weighed it, preponderates—it must preponderate in favor of the plaintiff on all the different propositions that I am going to give you, before he can recover. It must preponderate that the defendant was negligent in operating that car, and that the injury resulted from the causes that have been alleged in the declaration.

"Now, I desire to define to you what is meant by negligence. Negligence is neither more nor less than the failure of duty. Negligence consists in the want of that reasonable care which would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable injury. Negligence consists in the failure to observe that degree of care which the law requires for the protection of the interests likely to be injured or affected by the want of it. You have got a right, according to the definition of negligence that I have given you, to take into consideration what both parties were doing. Each of them had a right upon the street. Each of them should owe a duty to the other. The defendant could not turn out; and when I say the defendant could not turn out I mean the cars on the track could not turn either to the right or left. It was the duty of the defendant to operate its cars in a reasonably careful and prudent manner so as to prevent a collision. It was the duty of the defendant company to watch out and see what danger there was in running the cars along the streets, particularly along Ottawa street. It was its duty to use reasonable care and prudence to avoid a collision with the plaintiff's automobile. You are to take into consideration the duty of the defendant, what they were doing, all the facts and circumstances, particularly as they bear upon the manner in which the automobile and street car were run on Ottawa street. * * * Now, if there was no negli-

gence on the part of the defendant that caused this colli-
sion, and you should so find, or you should not find that
it was proven by a fair proponderance of the evidence that
the defendant was negligent in that matter, why, in that
case your verdict—stop right there and say that your ver-
dict would be not guilty.   But if you do find that the de-
fendant was negligent, then it is your duty to consider and
take into consideration, at the same time as you are con-
sidering the duty resting upon the defendant, the duty
that the plaintiff owed.   It is the plaintiff's duty to exer-
cise ordinary care and prudence in operating his automo-
bile upon the same, the same as the definition that I have
given you in relation to negligence.   If he fails to exer-
cise that care and caution that he ought to, under all the
circumstances, and his failure to exercise that care and
caution that he ought to, under all the circumstances,
contributed in any degree to the injury, that is what the
law calls contributory negligence; and if you find that the
plaintiff was guilty of contributory negligence, such neg-
ligence as contributed to the injury, then, no matter what
the negligence of the defendant may be, if you find him
guilty of contributory negligence, still your verdict should
be for the defendant.

"It is your duty to take into consideration all the
matters that have come out in evidence here—the street car
line, where the street car was when he entered near the
Steiner House on Ottawa street, where the plaintiff
was, how he operated his automobile down Ottawa street,
whether he was negligent about making a short turn across
the street.   He should be careful in crossing a street car
track, because the street car track is notice to every person
that there is a car upon it or may be a car upon it, and
it is his duty to take the ordinary care and precaution to
avoid a collision that any person of ordinary care and
precaution would take under all the circumstances.   That
is what he is required to do.   If he has done that, he is not
guilty of contributory negligence.   If he has not done that,
he is guilty of contributory negligence.   You have heard
the testimony in relation to what he did.   You have heard
that testimony.   I am going to leave that all to you.   It
is for you.   This question of negligence and contributory
negligence in this case is a mixed matter of law and
fact.   I have given you the rules that should govern you
in your decision of this matter, both as to the negligence

of the defendant and as to the contributory negligence of the plaintiff."

A reference to the requests to charge show them to be argumentative. So far as they contained a proper statement of the law, we think they were covered by the general charge.

Did the court err in receiving the testimony of the witness Baker? This witness was a policeman, who got about the city on a motorcycle that had upon it a speedometer. He was allowed to testify to the speed at which defendant's car was run at the place of the accident upon another day than when the accident happened. Before he was allowed to do this, the motorman was placed on the stand, and testified the car was run at the same speed at the time of the accident as upon other days. In view of this testimony, we cannot say the reception of this testimony was error.

Judgment should be affirmed.

BIRD, J., concurred with MOORE, C. J.