COLBORNE *v.* DETROIT UNITED RAILWAY.

1. CARRIERS—NEGLIGENCE—IMPUTED NEGLIGENCE—STREET RAILWAYS.

Negligence of the driver of an automobile in which plaintiff was riding is imputable to plaintiff, in an action for injuries resulting from a collision with a street car.[1]

2. NEGLIGENCE—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE.

It was not erroneous for the trial court, in directing a verdict for defendant, to hold that the evidence showed that defendant's street car was lighted, upon the testimony of all defendant's witnesses and of one witness for plaintiff, uncontradicted except by plaintiff's testimony and that of the owner of the automobile in which she was riding, that they did not see the street car and saw no

[1] As to duty of operator of automobile when near street cars, see note in 38 L. R. A. (N. S.) 493.

On the question of imputed negligence of driver to passenger, see note in 8 L. R. A. (N. S.) 597.

lights, the plaintiff admitting, however, that the car was lighted immediately after the accident.

3. SAME—DIRECTED VERDICT.

Evidence that plaintiff's companion, driving a motor car, looked both ways before crossing defendant's tracks but failed to see a lighted car approaching a short distance away in the block, although it was seen by a witness for plaintiff when it was nearly a block from the scene of the collision, that the automobile was proceeding slowly and under complete control, and that the evening was clear, the view unobstructed, and no passing vehicles distracted the attention of the driver, justified the direction of a verdict for defendant on the ground of contributory negligence.

Error to Wayne; Van Zile, J. Submitted June 16, 1913. (Docket No. 89.) Decided September 30, 1913.

Case by Harriet Colborne against the Detroit United Railway for personal injuries. Judgment for defendant upon a directed verdict. Plaintiff brings error. Affirmed.

*Thomas J. Mahon* and *Thomas W. Thompson,* for appellant.

*Corliss, Leete & Joslyn (Wm. G. Fitzpatrick,* of counsel), for appellee.

STEERE, C. J. Plaintiff brought this action *ex delicto* in the circuit court of Wayne county to recover damages for personal injuries sustained by her in a collision between one of defendant's street cars and an automobile in which she was riding. In the trial court, at the conclusion of the testimony, a verdict in favor of defendant was directed by the court, on the ground that the driver of the automobile was, as a matter of law, guilty of such contributory negligence as to preclude recovery.

This accident occurred at the intersection of Oakland and Holbrook avenues in the city of Detroit on the evening of November 13, 1910, at about 5 o'clock, just as it was getting dusk, and shortly after lights in stores and on the streets were lit.

Plaintiff was out that evening with a friend named Kolchowsky, whose wife she afterwards became, taking a pleasure ride around the city in his automobile, which he was driving. He testified that he had lived in Detroit about two years, and was familiar, in a general way, with the city, but did not know, previous to the accident, that there were car tracks on Oakland avenue. This avenue runs north and south through the city, and is traversed by double tracks of defendant's line. Holbrook avenue crosses it at right angles.

In the course of their ride around the city, Kolchowsky was driving west on Holbrook avenue, and at its intersection with Oakland came upon defendant's west track just at the proper time to collide with a regular car upon that track going south. The drivers of the two vehicles each testify that the other ran into him. However that may be, it is made clear that both attempted to briefly occupy, for purposes of travel, the same spot in the highway at the same time, with disastrous results to the automobile and its occupants.

The negligence charged as ground of recovery in plaintiff's declaration is defendant's failure to have its car lighted and display proper signal lights, giving notice to persons about to cross the track that a car was approaching, and failure to sound a gong or other alarm for the same purpose.

There was testimony produced by plaintiff tending to support portions of this charge, and positive testimony was produced by defendant to the contrary, which it may be conceded raised an issue of fact for the jury, were it shown that plaintiff was free from

contributory negligence, or had the testimony of plaintiff also presented an issue of fact for the jury on the latter question. But in order to recover plaintiff must allege and prove not only the negligence of defendant, but that she herself and also the party driving the vehicle in which she was riding were free from any negligence which contributed to the accident.

The trial court held and charged that the negligence of Kolchowsky, the driver of the conveyance in which plaintiff was a voluntary passenger, was imputable to her. Counsel assign error thereon, not overlooking former decisions of this court on that subject, but urging that those decisions should be overruled and a contrary view adopted, in harmony with numerous decisions cited from other jurisdictions. Were the question new or uncertain in this State, it might call for serious consideration; but the doctrine of *stare decisis* is not to be lightly disregarded. It was said in *Mullen* v. *City of Owosso,* 100 Mich. 103 (58 N. W. 663, 23 L. R. A. 693, 43 Am. St. Rep. 436), that, where a woman of mature years and discretion voluntarily entered the private conveyance of another to ride with him, and by his contributory negligence was injured, she must be held to have adopted his conveyance for the time being as her own and to have assumed the risk of his negligence, which must therefore be imputed to her. Though counsel there made the same contention as is made here, it was then said that this rule "has been too long settled to be now disturbed." The ruling of the trial court was in harmony with that case and the authorities there cited.

Plaintiff's crucial assignment of error and argument naturally center upon that portion of the charge in which the court directed a verdict for defendant, which is as follows:

"The undisputed proof is that the car was lit inside, so that, assuming it had no headlight, as claimed by the plaintiff, this car could have been seen on this night more than a block away when the plaintiff arrived at Oakland street curb line, because he would have a clear view from there, where he could have had an unobstructed view up that street. He was at this point at least 22 feet away from the southwest track, on which the collision happened. This machine was running 6 miles an hour, and, as he testified, the machine could have been stopped, and he would, if in the exercise of ordinary care and prudence, have stopped his car and waited for it to pass. Had he looked when going onto the first track, he would have had 9 feet 8 inches to have stopped his car or automobile before he reached the track upon which the collision occurred. At that point the street car must have been very close, for he says that as soon as the front wheel [was] on the first track or east rail of the collision track, the car was right on him, and struck his car at the wind shield on one side or window. So that when he was on the first rail of the first track, 9 feet 8 inches away, the street car could not have been but a very few feet away. The automobile was going at 6 miles an hour. He neither stopped or turned aside for the street car. There is no proof of due care on the part of the plaintiff, and therefore, as a matter of law, the court must find the plaintiff guilty of contributory negligence."

It is urged that certain of the foregoing statements of facts made by the court are not undisputed, and others are but inferences drawn from evidence upon which honest judgments might differ and a jury might legitimately reach other conclusions.

Upon the subject of headlights, Kolchowsky testified that there were none on the car. When directly interrogated as to the car being lit inside, he stated that he saw no lights. He and plaintiff testified, in a general way, that the gong was not sounded, that they saw no lights, and the car was not lighted; they also testified that they did not see the car at all until just as it struck the automobile, and she stated that

the car was lighted when she looked at it immediately after the accident. On cross-examination, in answer to the question, "But this car didn't have any lights on it or in it?" she said, "Well, I didn't see any." Plaintiff's witnesses to the accident were Kolchowsky, herself, and a man named Frank Bohn. The latter witness, who gave testimony that the motorman did not sound an alarm for the crossing, also testified that he saw the car coming over a block away from where he sat on the steps of a house on Holbrook avenue; that he saw it diagonally from his position, and did not see the headlights, but that it was plainly lighted inside, enabling him to see it by the lighted windows. In addition to this, the positive evidence of numerous witnesses of defendant is overwhelming that the car was lighted. The only suggestions to the contrary of its being lighted inside is the, in effect negative, evidence of the occupants of the automobile, who say they did not see the car at all until it was upon them, and did not see any lights before it struck them, while their own witness says it was by means of the lights that he saw the car over a block away. We think the trial court not in error when assuming the evidence clear and undisputed that the car was lighted on the inside.

A map of the locality, duly proven, was in evidence, and its correctness not questioned. The statement of the court as to measurements and distances was supported by the map and accompanying testimony, which was not disputed. The evidence in that connection showed that the widening vision along Oakland avenue, to one going west on Holbrook opened an unobstructed view northerly on Oakland of 150 feet when yet 48 feet east of a line midway between the tracks ahead, and when 12 feet nearer that line the view to the north up Oakland was unobstructed. Kolchowsky admits there was nothing in the highway on Oakland to interfere with his

seeing along it as far as the condition of light permitted. Irrespective of the positive statements of defendant's witnesses as to how far the car could be seen that night if unlighted, and was seen as lighted, plaintiff's witness Bohn supports the statement of the court that the car could have been seen more than a block away. He said, "I saw it coming a little over a block, through the windows of the car," and that it was running about the usual rate of speed.

The testimony of plaintiff and Kolchowsky is not harmonious in certain material particulars. She testified that just before they came upon Oakland avenue they were talking together about a trip which they were planning for the purpose of visiting her brother on Thanksgiving day, a project mooted by her, and upon which Kolchowsky looked with favor, provided he could dispose of his roadster and get a touring car to journey in. The events immediately subsequent to this conversation are described by her as follows:

"Just when we come to the track, I says before we come to it, I says, 'Here is a street car track.' We both just looked like that, both like that, both ways. Well, we just got over that third rail, and just as our car seemed about just over the rail, and this street car track, it just seemed—I seen the other part of the car, just had a glance of it, and I hollered, and it struck the engine broadside, and it knocked him unconscious. The fire flew out of the engine, and it seemed as though I was thrown up and turned inside down, and we were both under the car and dragged. I couldn't tell the distance we were dragged.

"Q. You could not state the distance, but how far did this street car run after it struck you?

"A. Further—a man there came and raised part of it up, and I got out from under the car.

"The Court: You were submerged under the car?

"A. Yes, we were both under the car. The car was turned upside down—the auto. They had us pinned underneath, caught underneath, and we could

177 MICH.—10.

not see at all, so then somebody came and lifted the auto off of us. There was a piece that run into my head here, and I got hold of that and pulled it out; pulled a piece of iron out of my head. The iron .came near the right eye. My two legs were right through the bottom part of the car where the footboards are. The bottom of the car was broken, and my legs went right through. That is how I was pinned underneath the car. The man raised the side, and I got out; but then I said to them, I said: 'There is a man in there; take him out. Oh, he is under there.' He was under there; he was under the car."

Kolchowsky testified that he saw the car tracks ahead on Oakland when he was 100 feet away, and slackened down to 6 miles an hour or less, keeping his engine on high speed, and that going at 6 miles an hour he could stop in from 6 to 10 feet; that when within 25 or 30 feet of the tracks he looked both ways and listened, saw and heard nothing but the rumbling of his own machine, and continued on, looking again when, as he variously states it, he was 10 or 15 feet from the last track, just before he struck the first rail, nearly on the track, and discovering nothing started up speed to go across "as if nothing was there;" that he heard a rumbling, and looking to the right saw the street car coming 15 or 20 feet away, grabbed the emergency brake, but whether it did any good did not know for the car was too near on top of him, and struck his machine just back of the engine near the wind shield, and knocked him unconscious. The probability and verity of this narration is, of course, within the realm of facts; but, taking it as he tells it, within a distance from the track in' which he could have stopped, he speeded up his car without looking again and started across as if nothing was there.

On cross-examination he testifies as to his observations and proximity to the track in part as follows:

"Q. At the time you saw this car 15 or 20 feet

away from you, you were on the tracks—the tracks of the last track—the rails of the last track, I should say?

"*A.* Just about on the first rail, the front wheel.

"*Q.* The front wheel was just about on the first rail; that would be on the east rail of the south-bound track?

"*A.* Yes, sir.

"*Q.* From the time that you made your observation when you were 25 or 30 feet away from the tracks, the easterly track, the rail of the north-bound track, until the time that you—when your front wheels were right onto the south-bound track, and the car was 15 or 20 feet away from you, did you look again?

"*A.* No, I just heard the noise first. * * *

"*Q.* And at that instant of time when you first saw and heard the car, the car was, in your best judgment, from 15 to 20 feet away from you?

"*A.* Just about. * * *

"*Q.* Then just as soon as you got near the track you shot your power on in an attempt to get by, is that it?

"*A.* No, I attempted to go across as if nothing was there.

"*Q.* Well, then, you shot your power on in attempting to go by before you heard or saw the car?

"*A.* Yes, sir. * * *

"*Q.* Then you went about 10 feet, you think, and got so your front wheels were right on the easterly rail of the south-bound track when you saw this car or heard this car 15 or 20 feet away?

"*A.* Yes, sir; on the first track with the front wheels."

Asked on redirect examination how near he was when he took his last observation to assure himself nothing was coming, he answered, "It was probably about 10 feet, or something like that, probably 15."

Plaintiff. and Kolchowsky were motoring down Holbrook avenue in the gathering twilight, in a portion of the city with which he was not familiar, crossing streets of which he was ignorant whether or not street cars traversed them. He states, "I was out

that evening to demonstrate the car." Just before the final demonstration he was engaged in conversation with his companion, and future wife, planning to get a touring car in which they were to journey together to visit her brother on Thanksgiving. That this mutual contemplation of future events must have, to some extent, absorbed and diverted his active attention from the emergencies of their immediate environment is, at least, a legitimate inference, strengthened by plaintiff's testimony that she made the discovery they were in close proximity to a car line. She testifies: "When we got just near the track," also worded in another part of her testimony, "just when we came to the track, I says, 'Here is a street car track.'" He states that he looked and listened twice; that it was dark. He not only saw nothing, but heard nothing except his own engine. He did not stop. If it was dark, and the car not lighted, as he claims, its approach would be ascertained only by listening. The car certainly was then approaching, and very close upon him. His first look was, as he states in one part of his testimony, at a point so far back that he "could not see up the tracks," and again he said it was when he was "25 or 30 feet away," and he could see along Oakland avenue as far as the darkness permitted. His last look was when he was 10 or 15 feet from the track the car was running upon; he then increased his speed, and without looking again proceeded to cross as if nothing was there. It was a clear evening and he testifies that his sight and hearing were good. He knew he was approaching a place of danger where there were double tracks, upon which cars were liable to be running either way at any time. He did not know their times of passing. He knew he was perfectly safe on either side of that short danger zone, and, however close, he was perfectly free from that distracting solicitude as to his means of trans-

portation being frightened by a passing car, so often urged in the case of horses under like circumstances. Before passing into the line of danger from his place of safety, where he had ample opportunity to observe without obstruction, it was his duty to assure and re-assure himself "that there is not a car directly upon him, of which situation the fact that he is struck is conclusive proof." *Manos* v. *Railway*, 168 Mich. 155 (130 N. W. 664).

This is not of that class of cases in which the car has been seen, and the plaintiff, reasonably believing a crossing could safely be made, has attempted to cross, and been injured, owing to the fact that the car was run at an excessive rate of speed, or being otherwise negligently operated, and therefore the question of whether plaintiff, in the exercise of common prudence, might have reasonably judged there was sufficient time to pass became a question of fact, upon which opinions might reasonably differ. This is a case of a right angle crossing, over a double track of an electric railway line. As plaintiff approached the track, he says he saw it 100 feet away. The street was clear except for the oncoming car. There was no confusion of passing conveyances, or persons, or cars running on different tracks, to perplex. He could and should have made sure of the safety of proceeding, by looking just before entering upon the track, and at such a point that he could stop his machine if necessary in order to avoid a collision. This rule should be as strictly applied to an automobile as to a pedestrian, and the reasons for its application are more impelling. Usually the careless pedestrian only imperils his own safety.

In the light of common knowledge courts can well take judicial notice of the automobile, not only as a most useful and pleasing means of swiftly transporting persons and property for pleasure or business, when properly controlled and cautiously driven, but

as a vehicle in its possibilities so destructive when in the hands of careless and reckless drivers as to spread over the land the maimed and dead until it has belittled the cruelties of the car of Juggernaut.

We think the conclusions reached by the trial court, in directing a verdict for defendant, find authority in principle in *McGee* v. *Railway Co.*, 102 Mich. 107 (60 N. W. 293, 26 L. R. A. 300, 47 Am. St. Rep. 507); *Borschall* v. *Railway Co.*, 115 Mich. 473 (73 N. W. 551); *Hilts* v. *Foote*, 125 Mich. 241 (84 N. W. 139); *Merritt* v. *Foote*, 128 Mich. 367 (87 N. W. 262); *Measel* v. *Railway*, 166 Mich. 688 (132 N. W. 453); *Stevenson* v. *Railway*, 167 Mich. 45 (132 N. W. 451); *Manos* v. *Railway, supra; Puffer* v. *Lighting Co.*, 173 Mich. 193 (139 N. W. 19); and other cases cited in these decisions.

On the record as an entirety we find no reversible error, and the judgment is affirmed.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.