DUNN v. DETROIT, JACKSON & CHICAGO RAILWAY.

STREET RAILWAYS—INTERURBAN ROAD—CROSSING ACCIDENT—NEG-LIGENCE—PERSONAL INJURIES—LIGHTS—SIGNALS.

Plaintiff was struck and injured as he attempted to drive across defendant's interurban track, on a dark night. He testified that he stopped, looked, and listened before he drove on the tracks, that he neither saw nor heard the approaching car, that no whistle or other signal was sounded, and that the car did not display a headlight. He discovered the car when it was about seventy-five feet away and did what he then could to avert an accident. He claimed to have been two rods from the track when he made his first observation, and admitted that he did not look again until his horses were nearly across the track, which his team crossed about at a right angle. The track lay along the street on which he was traveling and crossed to the north side at the point of the collision, the car coming from the direction in which he was going. *Held*, that the testimony warranted an inference that if a headlight had been in place on the car he would have been able to discover its approach, that the evidence was sufficient to sustain a verdict for plaintiff, who could not be held chargeable with contributory negligence as a matter of law.[1]

[1]On the duty to look and listen before crossing tracks of an electric road, see notes in 15 L. R. A. (N. S.) 254, 23 L. R. A. (N. S.) 1224.

Error to Wayne; Van Zile, J.  Submitted October
18, 1915.   (Docket No. 147.)   Decided December 21,
1915.

Case by Fred Dunn against the Detroit, Jackson &
Chicago Railway for personal injuries.  Judgment for
plaintiff.  Defendant brings error.  Affirmed.

*Corliss, Leete & Moody* and *William G. Fitzpatrick,*
for appellant.

*Edward M. Vining* and *William C. Gottman,* for appellee.

OSTRANDER, J.  Plaintiff, in a wagon with a load of
furniture, was driving a team of horses through the
village of Dearborn, going west on Michigan avenue.
It was about half past 8 o'clock in the evening.  The
night was dark.  The street is 82 feet wide, and paved.
West of the village the highway is 66 feet wide, about
16 feet of it being macadamized.  Defendant's track
occupies the center of the street in the village and the
north side of the highway west of the village.  Plain-
tiff was familiar with the situation, knew that he must
cross the railroad track, and his testimony tends to
prove that he drove so as to cross the angling track
squarely, or nearly so.  He was alone, and testifies
that before attempting to cross the track he stopped
the team, looked before and behind him, listened,
neither saw nor heard an approaching car, and pro-
ceeded.  His horses were walking.  A car from the
west struck the wagon, causing the injury complained
about.  He had no warning of the approach of the car,
no headlight was burning, no gong sounded, no whistle
blown.  When he first saw the car, it was 75 feet from
him.  He then saw a light inside, or outside, of the car
—knew that the car was coming.  Testimony for de-
fendant tended to prove that the collision occurred,

not on the angling track, but about 150 feet east of the point where the track curves to the north, that the whistle was sounded some 500 feet from where it occurred, the headlight was burning, the car lighted inside, the car was slowed down on account of the approach to the angle in the track, and plaintiff's position was not disclosed to the motorman until the car was upon, or was about to swing from the angling to and upon, the straight east and west track through the village. When plaintiff's position was seen, he was in the middle of the track, headed west. Although every means to avert a collision was then employed, it could not be avoided.

There are various details of distances, time, and other circumstances not stated in the foregoing rather general outline of what the testimony tended to prove, relied upon in the trial court and here as establishing beyond question the contributory negligence of plaintiff, even if it be conceded that the headlight upon defendant's car was not burning. A verdict for plaintiff was returned by the jury, and judgment was entered upon the verdict. The refusal of the court to direct a verdict for defendant at the close of plaintiff's evidence and at the close of all the evidence, refusal to grant a new trial upon the ground that the verdict was against the weight of evidence, and the refusal of the court to give defendant's requests to charge, are assigned as error. The requests to charge preferred by defendant were the following:

"(1) Under the evidence in the case, the plaintiff cannot recover, and your verdict will be for the defendant.

"(2) The plaintiff under the evidence is guilty of negligence which at least contributed to his injury, and your verdict will be for defendant.

"(3) To drive two rods after looking, and then going upon and across a railroad track in the nighttime without looking just before going upon the track and

without reassuring oneself that the crossing was safe, is negligence as a matter of law preventing a recovery on the part of one struck by a car before he gets over the track, no matter what the negligence of the defendant may be.

"(4) By the clear and overwhelming weight of the evidence, the lights on the inside of the car were lighted before and at the time the accident happened.

"(5) Even though the headlight was not burning as the car approached the scene of the accident, it is inconceivable that, had plaintiff looked at all, he would not have seen or heard the car as it was approaching in sufficient time to have enabled him to stop his team and let it pass.

"(6) The fact that the car struck the wagon before plaintiff had succeeded in getting across the track, according to his theory, is conclusive evidence that it was very near and was in motion approaching towards him at the time he claims to have stopped. looked, and listened.

"(7) It appears from plaintiff's evidence that not more than three seconds elapsed between the time that he started up his horses and the instant of collision. Under the undisputed evidence and the physical facts, the car could not have been more than a few feet distant when this observation was made, and it was negligence for the plaintiff to start and attempt to cross the track.

"(8) Even if it be assumed that no whistle was blown or gong rung, the failure to blow a whistle or ring a gong cannot be said to have been the proximate cause of the accident, and for such failure no recovery could be had in this case."

It is said in the brief for appellant:

"It does not answer for plaintiff to say that he looked and did not see, when the physical facts prove to a demonstration that if he looked he must have seen, or that he looked inattentively or heedlessly."

According to the testimony of the plaintiff, when he stopped his team for the purpose of observation, it and the wagon were on the north side of and substantially parallel with the railroad track, which immediately in

front of him curved to the right across the line of the course he had been pursuing. He did not turn at right angles to his former course, but did diverge from it to the south. On the course he took he had to travel a considerable distance before the rear of his wagon was across the track.

"*Q.* From the time that you looked west when your horses' heads were two rods away from the point where you crossed this track, you never looked again, did you?

"*A.* Yes, I looked, drove my horses across.

"*Q.* And you did not look again until your horses crossed the track, is that right?

"*A.* Yes, sir.

"*Q.* After you made your last look to the west, you drove your horses two rods and across the width of the track before you looked again, and then, when you looked, the car was right on top of you?

"*A.* Yes, sir. * * * When I fist saw the car, it was 75 feet away."

Recalled, the plaintiff testified, among other things:

"*Q.* In crossing the track in reference to looking, what did you do?

"*A.* I looked and drove my team across, and when I drove across there I was looking west. * * *

"*Q.* In other words, from this point where the heads of your horses were two rods away from the point of the track where you crossed, you had to swing the heads of your horses slightly and then square them around again to the south in order to cross the track at right angles. Isn't that so?

"*A.* No, sir.

"*Q.* You did cross the track with your wagon wheels at right angles, did you?

"*The Court:* Right angles with the track?

"*Q.* Right angles with the track?

"*The Court:* When you crossed. Do you know what right angles means?

"*A.* Cramped to the right?

"*Q.* No, no; do you know what is right angles?

"*The Court:* Right straight across; did your wheels

strike that track square across it, or did it strike it at an angle?

"*A.* It was pretty much of a right angle, as I could judge.

"*Q.* In other words, you testified the other day, didn't you, that you aimed to let both wheels of your wagon strike the track at once?

"*A.* Yes, sir.

"*Q.* You wanted to go squarely across the track, that is what you said the other day?

"*A.* Yes, sir.

"*Q.* You did have to make some change, didn't you—

"*A.* No, sir.

"*Q.* — in your direction?

"*A.* No, sir.

"*Q.* Then you had to swing your horses to the left, and towards the track then?

"*A.* I did not swing them to the left.

"*Q.* You did, I say?

"*A.* Yes, sir."

There is, I think, a patent distinction between this case and *Colborne* v. *Railway,* 177 Mich. 139 (143 N. W. 32), a case cited and relied upon by appellant. The trial court apparently had it in mind when he refused a peremptory instruction to the jury. If it were conceded, or was fairly established, that if plaintiff had looked attentively he must have seen the car, or that he was inattentive in the observation he made, then, of course, a different case would be presented. But neither fact is conceded, and the inferences which appellant seeks to draw from all of the disclosed surroundings are not the only or necessary ones. At night, in the country, where cars or trains are occasional, one expects to discover an approaching car or train by hearing or seeing it. One looks for a light, or for lights. It must be assumed that defendant's car carried no burning headlight. It may be inferred that if it had carried a headlight plaintiff would have discovered it. As it approached plaintiff, when his team was standing and he was looking for it, the side of the

car through which light radiated may not have been visible. In the absence of a headlight, it is not certain that he could have distinguished the car, or learned of its approach. Usually, one can see a headlight a long ways in a dark night, and having attentively looked for one, within the range of vision, which is considerable, and discovered none, nor anything else indicating the approach of a car or train, it cannot be said as matter of law that it is negligence to rely upon what the vision has revealed, or failed to reveal. When one can see a light a mile, or for a less but very considerable distance, has looked attentively and discovered no light, he is apt to consider danger from that direction as impossible. Especially would this be true when in proceeding to cross the track the driver is facing, or nearly facing, the direction from which danger is to be apprehended. In a city street, where one car follows another in more or less rapid succession, and in both directions, where vision is limited, prudent men do not, because they reasonably cannot, depend upon anything but attentive and frequent looking in both directions. In the *Colborne Case* it was established that when the driver of the automobile entered upon the track the car was directly upon him; that if he had looked he must have seen the approaching car. See a collection and review of our decisions in *Manos v. Railway*, 168 Mich. 155 (130 N. W. 664).

Being of opinion that plaintiff's prudence, or want of it, cannot be determined as matter of law, and that the verdict is supported by testimony which cannot be disregarded, I think the judgment should be affirmed.

Judgment affirmed.

BROOKE, C. J., and PERSON, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.