BRAY *v.* MICHIGAN UNITED TRACTION CO.

STREET RAILWAYS—NEGLIGENCE—ANIMALS — CONTRIBUTORY NEGLI-GENCE.

Plaintiff, whose horse was injured by defendant's street car in the daytime in crossing the track at a street inter-section, but who did not look a second time for an ap-proaching car after he passed a place 60 or 70 feet away from the track, was not entitled to recover because of his contributory negligence, the testimony showing that he was familiar with the crossing and with the dangers thereof, and knew about the frequency of the passage of cars.[1]

Error to Ingham; Collingwood, J. Submitted April 4, 1916. (Docket No. 12.) Decided June 1, 1916.

Case by Mahlon Bray against the Michigan United Traction Company for injuries to plaintiff's horse.

[1]As to liability of street railway company for injuries by street car collisions with vehicles or horses, see comprehensive note in 25 L. R. A. 508, 49 L. R. A. (N. S.) 505. And for cases dis-cussing the duty of a person traveling upon a street to look and listen before crossing the tracks of an electric road, see notes in 15 L. R. A. (N. S.) 254, 23 L. R. A. (N. S.) 1224.

Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Warner, Raudabaugh & Person*, for appellant.

*Sanford W. Ladd* (*Warren, Cady, Ladd & Hill*, of counsel), for appellee.

MOORE, J. The plaintiff is a farmer living about six miles from the city of Lansing. In going to the city of Lansing he frequently traveled what is known as the River Drive road, through the Michigan Agricultural College grounds, which runs in a southeasterly and northwesterly direction. This road intersects Michigan avenue, which is the street running from Lansing to East Lansing, at an acute angle. The defendant operates an electric railway on Michigan avenue. Its track is on the south side of the highway where the River Drive crosses the track.

The plaintiff was driving a heavy team of horses hitched to a lumber wagon. The plaintiff was riding on the hounds of the wagon. The team he was driving was traveling at the rate of 3 to 3½ miles per hour. When the horses reached the track he heard the car whistle, at which time the car was about 40 to 50 feet from him. He quickly turned his horses to the left. His off horse was struck in the hip, and was so badly hurt she had to be killed.

At the close of the evidence for the plaintiff the court directed a verdict for the defendant on the ground that the plaintiff was guilty of contributory negligence. The question for our consideration is whether plaintiff made a case which should have been submitted to the jury.

The accident happened in the forenoon during broad daylight. Plaintiff was familiar with the crossing, the railway track, and the frequency with which defend-

ant ran its cars at the place of the accident. He testified. We quote:

"*Q*. Before driving to the track of the Michigan United Traction Company * * * did you look and listen to see whether you could see and hear a car coming or not?

"*A*. About halfway down the hill there is an opening, and the evergreens are not as thick, and shade trees. I could see no car. I came down the hill until I got within 60 or 70 feet. There is practically nothing. Then I looked and I saw no car, and I came on, but as I struck the track I heard the whistle. My horses' both forward feet were on the track, and I glanced, and I saw the car. I whirled them as soon as possible, but I was too late.

"*Q*. How close were you to the track here, that is, the highway, when you looked last to see if you could see the car?

"*A*. The River Drive intersects Michigan avenue in this shape; looking across these corners, I was probably 50 feet, looking across to the track, but I had between 60 and 70 feet to drive to cross the track.

"*Q*. How far could you see east on the track at that time?

"*A*. I counted the poles, and I think they are 100 feet apart. If they are 100 feet apart, it is about 600 feet that you see to the east.

"*Q*. And then what was there in the track?

"*A*. No car in sight.

"*Q*. Well, looking east, is there any hill?

"*A*. Yes, sir; looking east, there is a hill and down grade going towards the west and the hill that slopes to the east the other way. I could see the apex of the hill.

"*Q*. Was there any car between the apex of this hill and your place at that time?

"*A*. No, sir; none when I looked. I then had between 60 and 70 feet to travel to get across the track. * * *

"*Q*. At about what rate of speed was your team traveling at that time?

"*A*. At the time they came on the track they were on a walk. * * * I should judge they would walk from 3 to 3½ miles an hour.

"*Q*. You went forward after looking to the east and seeing no car?

"*A*. Yes, sir.

"*Q*. Did you not after that stop or hesitate?

"*A*. No, sir.

"*Q*. Did not stop after you made this last look to observe to the east the track; did not stop before you got on the track?

"*A*. No, sir."

On his cross-examination he made it even more apparent that he looked but once, and that, if he had looked just before going upon the track, when there was an opportunity to do so, he could have seen his danger in time to avoid it.

Under the version given by the plaintiff of the occurrence we think the trial court was justified in directing a verdict for the reason given by the following authorities: *Stevenson* v. *Railway*, 167 Mich. 45 (132 N. W. 451); *Manos* v. *Railway*, 168 Mich. 155 (130 N. W. 664), and the many cases cited therein; *Puffer* v. *Lighting Co.*, 173 Mich. 193 (139 N. W. 19); and *Champaign* v. *Railway*, 181 Mich. 672, at page 681 (148 N. W. 201), and the many cases cited therein.

Judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, STEERE, BROOKE, and PERSON, JJ., concurred. BIRD, J., did not sit.